19108

James Esther THOMAS, Respondent-Appellant, v. William D. LEEKE, successor to Ellis C. MacDougall, Director of the South Carolina Department of Corrections, Appellant-Respondent.

(186 S. E. (2d) 516)

Judgment reversed insofar as it imposed death sentence, 403 U. S. 948, 91 S. Ct. 2291, 29 L. Ed. (2d) 860.

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Emmet H. Clair, R. Evan Palmer, Asst. Attys. Gen.,* of Columbia, *for Appellant-Respondent,* cite:

*Messrs. John W. Williams, Jr.,* and *John W. McIntosh,* of Columbia, *for Respondent-Appellant,* cite:

*Messrs. John W. Williams, Jr.* and *John W. McIntosh,* of Columbia, *for Respondent-Appellant, on Appeal,* cite:

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Emmet H. Clair, R. Evan Palmer, Asst. Attys. Gen.,* of Columbia, *for Appellant-Respondent,* cite:

October 5, 1970.

LITTLEJOHN, Justice:

The petitioner Thomas, after pleading not guilty, was convicted by a jury of the crime of rape. The jury did not recommend mercy and he was, on February 17, 1965, sentenced to death, which was the only penalty provided by law. His conviction was affirmed by this court on December 12, 1966. *State v. Thomas,* 248 S. C. 573, 151 S. E. (2d) 855. Since that time, while awaiting electrocution, he filed a *habeas corpus* proceeding in the circuit court. The case comes before us now on an appeal by both the State and Thomas from an order of Circuit Judge Francis Nicholson.

Judge Nicholson refused to release the defendant or to grant a new trial. He ordered that the petitioner be remanded to the Court of General Sessions for Laurens County for resentencing in accord with the provision of Code Section 16-72 as if he had been recommended by the jury to the mercy of the court. The ruling was in effect to hold that the constitutional rights of the petitioner were infringed by the combination of Sections 16-72 and 17-553.4 of the 1962 Code.

The State has appealed that portion of the order which vacated the death penalty and remanded the case for resentencing to life imprisonment. We reverse that ruling.

The petitioner has appealed other portions of the order hereinafter indicated. We affirm the lower court on those issues raised by the petitioner.

There are a total of four issues presented for determination.

I

We deal first with the State's appeal and that part of the order which vacated the death penalty and remanded for resentencing to life imprisonment.

The two sections of the South Carolina Code brought in to question are as follows:

"§ 16-72. Punishment for rape or assault with intent to ravish.—Any person convicted of rape or assault with intent to ravish shall suffer death unless the jury shall recommend him to the mercy of the court in which event he shall be confined at hard labor in the State Penitentiary for a term not exceeding forty years nor less than five years, at the discretion of the presiding judge."

This section has been in effect for many decades. Thomas was convicted and sentenced under this code section.

"§ 17-553.4. Sentencing in cases of guilty pleas.—In all cases where by law the punishment is affected by the jury recommending the accused to the mercy of the court, and a plea of guilty is accepted with the approval of the court, the accused shall be sentenced in like manner as if the jury in a trial had recommended him to the mercy of the court."

Section 17-553.4 was enacted by the General Assembly in 1962. It was not a part of the rape-death penalty statute. (Section 16-72). It applied to all statutes involving crimes when the jury was permitted to recommend mercy and by so doing lessen the penalty. Some of these were Section 16-52 murder, Section 16-57 lynching, Section 16-91 kidnapping, Section 16-331 burglary, Section 16-336 breaking and entering a bank, and Section 16-337 using explosives in and about a money safe. It was treated by the trial courts of this State as valid legislation until our case of *State v. Harper*, 251 S. C. 379, 162 S. E. (2d) 712 (1968). We invalidated the section in the murder case of *Harper* as a result of *United States v. Jackson*, 390 U. S. 570, 88 S. Ct. 1209, 20 L. Ed. (2d) 138 (1968), which held that the death penalty provision of the Federal Kidnapping Act (18 U. S. C. § 1201 (a)) was invalid because it imposed an impermissible burden upon an accused's exercise of his Fifth Amendment right to plead not guilty, and of his Sixth Amendment right to demand a jury trial. In *Jackson* the court reasoned that the statutory scheme in its entirety held

out an enticement to the accused person to plead guilty and receive a penalty of life imprisonment or a term of years, whereas by pleading not guilty he exposed himself to the possibility of the death penalty. It is argued that the combination of our two statutes quoted above held out a similar enticement in 1965 to Thomas.

Before the enactment of Section 17-553.4 a defendant accused of rape did not have an election available to him which would assure that his life was spared. The same was true after the enactment of Section 17-553.4 in 1962. The combination of the two statutes did not give to an accused person the right to avoid the death penalty by entering a guilty plea.

In actuality, Section 17-553.4 did not confer any new rights upon an accused person. It was a provision designed to facilitate procedure.

Prior to 1962 in a capital case if the State elected not to pursue the death penalty, and the accused wished to enter a guilty plea, the procedure was to empanel a jury and instruct it to write the verdict "guilty with recommendation to mercy." From 1962 to 1968 the same result was accomplished, if the State did not wish to ask for the death penalty and the accused wished to plead guilty, by merely having him sign a guilty plea.

Before the 1962 amendment and after the amendment an accused person's chances of avoiding the death penalty were the same. At both times he could enter a lesser plea only if the court accepted the same. The amendment created no impermissible burden on Thomas.

The Petitioner has not demonstrated to the court that he was denied any rights by reason of Section 17-553.4. He entered a plea of not guilty and proceeded to trial. The ruling in Jackson does not apply.

Thomas was tried under Section 16-72 by a jury that found him guilty and did not recommend mercy. Nothing in *Jackson* held that the death pen-

alty was *per se* invalid. This court in *Harper* upheld the constitutionality of Section 16-52 (murder) and it follows by the same reasoning that Section 16-72 (rape) is constitutionally sound. Since the jury did not recommend mercy, the only sentence available to the trial judge by law was therefore death. The circuit judge erred in vacating the death sentence.

II

Having held vacation of the death penalty void, we now turn to the questions raised by petitioner to determine if he is entitled to relief.

The second issue for determination is whether the lower court erred in finding that Thomas failed to prove a systematic, discriminatory exclusion of Negroes from the grand and petit juries of Laurens County which indicted and convicted him. If such exclusion did exist then Thomas was denied the equal protection and due process guarantees of the constitution.

The statistical data presented by the petitioner for the years 1960 through 1965 indicated a disproportionately low number of Negroes on jury venires for terms of the Court of General Sessions compared to the percentage of Negro registrants in the county, Counsel argues that this fact alone has made out the *prima facie* case for relief required in *Whitus v. Georgia,* 385 U. S. 545, 87 S. Ct. 643, 17 L. Ed. (2d) 599 (1967). A further search of the record reveals omissions and mistakes in the data presented, and militates against the conclusion that a *prima facie* showing of systematic discrimination was made.

First, in comparing the percentages of Negroes registered to those who serve on grand juries at the time of Thomas' trial, the researcher did not subtract Negro women from the total figure for Negro registrants. In 1965 no women whomsoever served on grand or petit juries in South Carolina and therefore the figures are not reliable in this respect.

Second, in compiling the data, the venire lists for only the four terms of General Sessions Court each year were

used; the equal or greater number of terms of the Court of Common Pleas for each year was excluded. Accordingly, a true comparison is made possible because of the exclusion.

Third, petitioner's reliance on the method of identifying Negroes on the venire was not justified. It was the custom of the clerk when the jury roll was called at the opening of court to place a "c" by the name of each Negro member of the jury. This was not required of the clerk and was done for the information of lawyers who wished to study the jury list. Jurors not found for service of summons and those excused before the meeting of court were not considered. The "c" designation, made after a mere glance while the clerk was performing his official duty of recording mileage, was subject to error.

These factors warranted the lower court's denial of relief. The rule followed in South Carolina was recently stated in *Moorer v. State,* 244 S. C. 102, 135 S. E. (2d) 713 (1964):

"Discrimination in the selection of a jury must be proved; it cannot be presumed . . .; and a defendant objecting to a Grand or Petit Jury because of alleged discrimination against his race has the burden of establishing such discrimination."

*Moorer* noted that a *prima facie* showing of discrimination could be made if evidence is presented "that Negroes have never served on a jury in the county." The fact that Negroes served on the juries in Laurens County at the time of Thomas' trial is beyond dispute.

Petitioner seeks comfort in the *Whitus* case. We think, however, that the "opportunity for discrimination" frowned upon in that case was not shown in the Laurens County jury selection system.

The only exclusions shown in Laurens County by the record in the case at bar were for those males over 65, those citizens who were county employees, those persons convicted of felonies, and those persons in the exempted professions.

In *Swain v. Alabama,* 380 U. S. 202, 85 S. Ct. 824, 13 L. Ed. 759 (1965), the United States Supreme Court held

that an accused is not constitutionally entitled to a proportionate number of his race on the jury which tried him, nor is he entitled to a proportionate number on the venire from which petit jurors are drawn. In *Swain* the Supreme Court sustained the conviction in spite of proven under representation of his race because the "opportunity for discrimination" was not proven.

## III

The third issue for determination is whether Section 16-72 of the South Carolina Code is violative of the due process clause of the fourteenth amendment because it offers no standards by which a jury can determine whether to recommend mercy in a capital offense case.

The rule in South Carolina has been stated by this court numerous times. The right to recommend mercy and reduce the death sentence to a lesser penalty is solely within the unlimited discretion of the jury. The recommendation of mercy is purely a matter of grace which may be extended by the jury for any reason or for no reason at all. *State v. Worthy,* 239 S. C. 449, 123 S. E. (2d) 835 (1962), and cases cited therein.

Under the statute mercy does not become an issue until and unless the jury first finds one guilty. The jury's unlimited right to recommend mercy, as we held in *Worthy,* is probably more favorable than any standards which might be devised.

## IV

The last issue for determination is whether Thomas was denied equal protection of the law because the trial court excluded two prospective jurors who stated opposition to capital punishment.

The trial judge questioned the prospective jurors on *voir dire.* The following colloquy took place:

"The Court: Are you opposed to capital punishment?
"A. Yes, I am.

"The Court: Is this opposition of yours to capital punishment one which could not be changed by the evidence as you hear it from the witness on the stand in this case?

"A. Your Honor, I honestly don't believe it could be changed.

"The Court: All right, I will excuse you as a juror. You may be seated."

A second juror was excluded after the following *voir dire:*

"The Court: Are you opposed to capital punishment?

"A. Yes, sir.

"The Court: Is this opinion you have as to capital punishment one which could not be changed by the evidence as you hear it from the witnesses on the stand?

"A. Yes, sir.

"The Court: You are saying that under no circumstances would you be in favor of capital punishment, despite what the evidence showed?

A. No, sir.

"The Court: You are opposed to capital punishment in all cases?

"A. Yes, sir, most—all cases.

"The Court: I want to make certain I understand you. Could this opinion be changed by the evidence which you have heard from the witnesses on the stand?

"A. No, sir.

"The Court: All right, sir, I will excuse the juror."

The question presented is whether this *voir dire* examination was sufficient to meet the test laid down by the United States Supreme Court in *Witherspoon v. Illinois,* 391 U. S. 510, 88 S. Ct. 1770, 20 L. Ed. (2d) 776 (1968). The rule as stated by the court is that:

". . . a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscien-

tious or religious scruples against its infliction." The standard created by *Witherspoon* is thus:

"The most that can be demanded of a venireman in this regard is that he be willing to consider all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings. If the *voir dire* testimony in a given case indicates that the veniremen were excluded on any broader basis than this, the death sentence cannot be carried out . . . "

This ruling has been cited with approval by the court in *Boulden v. Holman,* 394 U. S. 478, 89 S. Ct. 1138, 22 L. Ed. (2d) 433 (1969), and *Maxwell v. Bishop,* 398 U. S. 262, 90 S. Ct. 1578, 26 L. Ed. (2d) 221 (1970).

The State as well as the defendant is entitled to a fair trial. The judge was convinced, as are we, that these two jurors were not qualified to serve as jurors under *Witherspoon.*

The trial judge took great pains to insure that the veniremen would be excused for cause only within very narrowly prescribed grounds. Both of them expressed much more than a general opposition to the death penalty from which the judge could conclude only that their feeling about the death penalty had been predetermined.

Our court has ruled that a *voir dire* examination conducted in the manner of that done by trial judge here was constitutionally permissible. *State v. Atkinson,* 253 S. C. 531, 172 S. E. (2d) 11 (1970).

We noted in *Atkinson* that the cases must now be read in the light of *Witherspoon.* We hold in this case, as we did in *Atkinson,* that the *Witherspoon* criteria have been met. We cannot say that the trial judge erred in concluding from the whole of the questioning that these two jurors' opposition to capital punishment could not be changed by evidence. *Witherspoon* requires no more than what was done by Judge Singletary at that trial.

The appeal of the State challenging the validity of the circuit court order to the extent that it vacated the death penalty, is sustained.

The appeal of the petitioner is overruled.

Affirmed in part; reversed in part.

Moss C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.

## APPENDIX

### UNITED STATES OF AMERICA, SS:
### THE PRESIDENT OF THE UNITED STATES
### OF AMERICA

To the Honorable the Judges of the Supreme Court of the State of South Carolina,

————*————

GREETINGS:

*Whereas,* lately in the Supreme Court of South Carolina, there came before you a cause between James Esther Thomas, respondent-appellant, and William D. Leeke, successor to Ellis C. McDougall, Director of the South Carolina Department of Corrections, appellant-respondent, No. 19108, wherein the judgment of the said Supreme Court was duly entered on the fifth day of October A.D. 1970, as appears by an inspection of the petition for *writ of certiorari* to the said Supreme Court and response thereto.

*And Whereas,* in the October Term, 1970 the said cause having been submitted to the *Supreme Court of the United States* on the said petition for *writ of certiorari* and response thereto, and the Court having granted the said petition:

*On Consideration Whereof,* it was ordered and adjudged on June 28, 1971, by this Court that the judgment of the Supreme Court of South Carolina, insofar as it imposes the death sentence, be reversed, *United States v. Jackson,* 390 U. S. 570, 88 S. Ct. 1209, 20 L. Ed. (2d) 138 (1968), *Pope v. United States,* 392 U. S. 651, 88 S. Ct. 2145, 20 L. Ed.

(2d) 1317 (1968), and that this cause be remanded to the Supreme Court of the State of South Carolina for further proceedings.

*Now, Therefore, the Cause is Remanded* to you in order that such proceedings may be had in the said cause, in conformity with the judgment of this Court above stated, as accord with right and justice, and the Constitution and laws of the United States, the said writ notwithstanding.

Witness the Honorable WARREN E. BURGER, Chief Justice of the United States, the twenty-third—day of July—in the year of our Lord one thousand nine hundred and seventy-one.

E. ROBERT SEAVER,
*Clerk of the Supreme Court*
*of the United States.*