## 20694

The STATE, Respondent, v. Walter Leroy NEELEY, Appellant.

(244 S. E. (2d) 522)

34

*W. Paul Cantrell, Jr.,* and *Chris B. Staubes, Jr.,* Charleston, *for appellant.*

*Atty. Gen. Daniel R. McLeod* and *Asst. Atty. Gen. Brian P. Gibbes,* Columbia, *for respondent.*

May 18, 1978.

LITTLEJOHN, Justice:

The appellant, Walter Leroy Neeley, was charged with premeditated murder and accessory before and after the fact of murder in connection with the October 10, 1975 shooting death of Dennis Bellamy. Appellant was tried by a jury in May, 1976, was found guilty and was sentenced to death by electrocution, pursuant to § 16-52, Code of Laws of South Carolina, *as amended* (Supp. 1975). He appeals his conviction and sentence, assigning error by way of twenty-six exceptions. We have restated the seven questions raised by appellant's exceptions, as follows:

1. Did the trial judge err in denying appellant's motion for a change of venue?

2. Did the trial judge commit error in the manner in which he conducted the *voir dire* examination?

3. Did the trial judge err in failing to instruct the jury that they were not to deliberate on the evidence until all the evidence had been received?

4. Did the trial judge err in ruling that the statements made by appellant to law enforcement officers were given freely and voluntarily in accordance with constitutional standards, and were therefore admissible into evidence?

5. Did the trial judge err in allowing evidence of other crimes committed by appellant to be introduced?

6. Did the trial judge err in admitting into evidence shoes seized from Gaskins' trailer and a gun and other items in Gaskins' possession at the time of his arrest?

7. Is Code § 16-52, *as amended* (Supp. 1975), unconstitutional in that no discretion was given judge or jury to impose a lesser sentence than death?

The body of Dennis Bellamy was discovered in a shallow grave in a wooded area, alongside the body of Johnnie

Knight, near Ropers Crossroads in the Prospect Community of Florence County. It was the State's theory that appellant and Donald Henry Gaskins lured Bellamy and Knight from North Charleston to Florence County for the purpose of killing them. The theory of the defense was that appellant brought Bellamy and Knight to Florence County because Gaskins told him to, but, that he had no prior knowledge of Gaskins' plans to kill Bellamy and Knight, and did not participate in their murder. Appellant did not testify in his own defense.

Donald Gaskins was convicted of murdering Dennis Bellamy and is presently serving a sentence of life imprisonment. See *State v. Gaskins,* S. C., 242 S. E. (2d) 220 (1978).

## CHANGE OF VENUE

In support of the motion for a change of venue, appellant submitted affidavits from lay citizens and local attorneys who stated that they did not believe he could receive a fair trial in Florence County, and local news items concerning the case. The trial judge denied the motion, but stated that he would reentertain the motion if he was satisfied that an impartial panel could not be obtained. After conducting extensive *voir dire* examination, the trial judge concluded that an impartial jury had been seated.

A change of venue is addressed to the judicial discretion of the trial judge, and his decision will not be disturbed absent a showing of an abuse of that discretion. *State v. Valenti,* 265 S. C. 380, 218 S. E. (2d) 726 (1975). Where the trial judge bases his ruling on adequate *voir dire* examination of the jurors, his conclusion that the objectivity of the jury panel has not been polluted with outside influence will not be disturbed absent extraordinary circumstances. *State v. Fowler,* 266 S. C. 203, 222 S. E. (2d) 497 (1976) ; *State v. Crowe,* 258 S. C. 258, 188 S. E. (2d) 379, *cert. den.,* 409 U. S. 1077, 93 S. Ct. 691, 34 L. Ed. (2d) 666 (1972). A review of the record fails to reveal that the trial judge abused his discretion.

## CONDUCT OF *VOIR DIRE* EXAMINATION

Appellant assigns error in the manner in which the ■ trial judge conducted the *voir dire* examination. He contends that the failure of the trial judge to ask the standard statutory questions of the entire jury venire, instead of merely directing the questions to the jurors after they had been seated, negated the use of his peremptory challenges. We see no merit to this exception. Although counsel for Neeley made a motion that the court ask certain questions of the prospective jurors during *voir dire* examination, the questions submitted to the judge were not made a part of the record. Additionally, no objection was raised by Neeley to the form of the *voir dire* examinations. We are satisfied that the trial judge asked the questions required by § 14-7-1020, 1976 Code. Having asked the statutory questions, any further examination was in the trial judge's discretion.

Appellant next assigns error in the failure of the ■■ trial judge to excuse a juror for cause based on the fact that her sister-in-law was the solicitor's secretary. There is no rule of law that a juror must be disqualified on account of his relationship to an attorney in the case. *State v. Nicholson,* 221 S. C. 399, 70 S. E. (2d) 632 (1952). This exception is without merit.

Finally, appellant contends that the trial judge erred ■ in excusing a juror for cause based on his opposition to capital punishment. The record indicates that the juror was unequivocally opposed to capital punishment, and that he could not render a verdict of guilty, regardless of the evidence, if it would result in the imposition of the death penalty. The trial judge's decision to excuse this juror was consistent with *Witherspoon v. Illinois,* 391 U. S. 510, 88 S. Ct. 1770, 20 L. Ed. (2d) 776 (1968), and was not erroneous. See *State v. Atkinson,* 253 S. C. 531, 172 S. E. (2d) 111 (1970); *Thomas v. Leeke,* 257 S. C. 491, 186 S. E. (2d) 516 (1970).

## FAILURE TO ADMONISH JURY

Appellant argues that the trial judge erred in failing to admonish the jury that they were not to deliberate until all of the evidence had been introduced. He maintains that this omission enabled the two alternate jurors to participate in the jury deliberations, thereby denying him a fair trial. Counsel for appellant concedes that he did not object to the court's failure to give this admonition. Since this question was not presented to the lower court, it cannot now be raised for the first time on appeal. *State v. White,* 253 S. C. 475, 171 S. E. (2d) 712 (1969).

## ADMISSIBILITY OF STATEMENTS

Appellant argues that the court erred by admitting into evidence three statements made by him to law enforcement officers. He contends that the statements were testimonial in nature, and were the result of custodial interrogations, so as to require the giving of the *Miranda* warnings, and a voluntary waiver of these rights, before they could be admissible in evidence.

The first statement was given to law enforcement officers on November 25, 1975. Detective Rufus Stoney testified that he was investigating the cases of some missing persons in North Charleston and was informed by the father of one such person that she frequently associated with persons who lived at 1807 Calvert Street. Stoney went to the house, not knowing who lived there, and appellant answered the door. After a brief conversation, Stoney asked appellant if he would mind going with him to the North Charleston Police Department. Stoney testified that he told appellant that he didn't have to go, but that they would like to ask him some questions about the missing girl. He also testified that he did not suspect appellant of having committed any crimes.

SLED agent Tom Henderson testified that when Stoney brought appellant to the police station, the three of them, along with Detective Roy Green, went into an office, and

that he advised appellant of his constitutional rights. Henderson then asked appellant if he would talk to them concerning some missing persons who were possibly associated with Donald Gaskins, and appellant replied that he would be more than willing to talk with them. Henderson further testified that appellant was not in custody or under arrest at the time, and that he was at the station voluntarily and of his own free will. Appellant proceeded to give a statement which was reduced to writing, read to him, and signed. Henderson testified that it was standard procedure to advise persons they talked to of their *Miranda* rights, and that no force, coercion, rewards, or promises of immunity were made to him. He testified that appellant was at the station for no more than two hours, after which he was returned home.

Appellant also objected to testimony that he led officers to the Prospect grave site on the morning of December 4, 1975. Stoney testified that on the morning of December 4, 1975, he and Greene picked up appellant at his house and drove to the Williamsburg County Sheriff's Department, where they were joined by several other law enforcement officers. He testified that no promises were made to appellant in return for his cooperation. Deputy Glenn Ard testified that appellant led the officers to several areas, but nothing was discovered. He then asked appellant if he thought he could do better if just the two of them searched, and appellant said he would try it that way. Ard testified that appellant proceeded to lead him to a wooded area beside a field, where the graves were discovered. He stated that he made no promises to appellant, and that he did not pressure him or coerce him in any way. Although counsel for appellant introduced testimony of three local residents who stated that they saw Ard give appellant a drink of something out of what looked like a flask, Ard denied that anyone gave Neeley liquor or intoxicants. He further testified that appellant was not in custody at the time, and that he did not threaten, promise or influence appellant while they were in the car together.

The third statement, also admitted over appellant's objection, was given the evening of December 4, 1975, after appellant had taken law enforcement officers to the grave sites. Sheriff William Barnes testified that appellant was taken to the North Charleston Police Department that evening, where he was held in custody as a material witness for the coroner. He testified that before any statement was taken from appellant, he was advised of his *Miranda* rights, and that appellant stated that he understood his rights. Barnes further testified that appellant told him that he did not want a lawyer, and that he wanted to talk with the officers. Appellant signed a waiver of rights, and gave a statement, which was reduced to writing, read to him, and signed. Barnes testified that appellant was not threatened, coerced, or forced in any way, and that no promises of reward or immunity were made to him in exchange for his statement. Appellant was not arrested and charged with murder until December 8, 1975.

In determining whether the lower court erred in admitting either of the three statements in evidence, we must first decide whether appellant was in custody or significantly deprived of his freedom of action at the time the statements were given. *See Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 694 (1966). This is the threshold question which must be reached to determine whether *Miranda* is applicable. If appellant was advised of his *Miranda* rights, but nevertheless chose to make a statement, the burden is on the State to prove by a preponderance of the evidence that his rights were voluntarily waived. *Lego v. Twomey,* 404 U. S. 477, 92 S. Ct. 619, 30 L. Ed. (2d) 618 (1972); *State v. Smith,* 268 S. C. 349, 234 S. E. (2d) 19 (1977).

With regard to the statement of November 24, and the statements of December 4, which led the officers to the grave sites, we hold that appellant was not "in custody" at the time he made the statements, and that *Mi-*

*randa* is therefore inapplicable. We base our holding on the recent case of *Oregon v. Mathiason,* 429 U. S. 492, 97 S. Ct. 711, 50 L. Ed. (2d) 714 (1977). There, a police officer who was investigating a burglary was given Mathiason's name, by the victim, as a possible suspect. After unsuccessfully attempting to contact the defendant, the officer left a note at his apartment asking the defendant to call him, because the officer wanted to discuss something with him. The defendant called the officer the next afternoon and agreed to go to the police station. Upon defendant's arrival at the police station, the officer told him that he was not under arrest, and proceeded to question him about the burglary. The defendant subsequently confessed to having committed the crime.

In a *per curiam* opinion, the United States Supreme Court held that the Supreme Court of Oregon had erred in reversing Mathiason's conviction on the ground that his confession was the product of custodial interrogation, and was not preceded by *Miranda* warnings. In further clarifying the situations which *Miranda* was intended to address, the Court stated:

"Such a noncustodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a 'coercive environment.' Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's free-

dom as to render him 'in custody.' It was *that* sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited." 97 S. Ct. at 714.

We conclude that appellant acted voluntarily in talking with the officers on November 24, and in helping them find the grave sites on December 4, and hold that there had not been placed upon his freedom such restrictions as to render him "in custody."

As to the statements given by appellant on the night of December 4, Sheriff Barnes testified that appellant was "in custody," albeit as a material witness. However, since appellant was advised of his *Miranda* rights, we need only determine whether he voluntarily waived his privilege against self-incrimination. After a careful consideration of the record, we hold that the preponderance of the evidence supports the conclusion that appellant's waiver of rights was voluntarily and intelligently made. *State v. Smith, supra.* We conclude that the lower court correctly admitted these statements in evidence.

## EVIDENCE OF OTHER CRIMES

Appellant assigns as error the trial judge's decision to allow in evidence testimony concerning the deaths of Johnnie Knight and Dianne Bellamy. He argues that this was evidence of other crimes which had no logical relevancy to the crime for which he was charged and was highly prejudicial. *See State v. Lyle,* 125 S. C. 406, 118 S. E. 803 (1923). With regard to the testimony concerning the death of Johnnie Knight, we think this testimony was so inextricably related to the death of Dennis Bellamy as to be clearly admissible to prove a common scheme or plan embracing the commission of two crimes so related that proof of one tends to establish proof of the other. *See State v. Conyers,* 268 S. C. 276, 233 S. E. (2d) 95 (1977).

The only reference to Dianne Bellamy's death was contained in the statement given by appellant on November 25, 1975. This statement implicated Donald

Gaskins as being solely responsible for Dianne Bellamy's death. No attempt was made by the State to imply, by the admission of this statement, that appellant was responsible for Dianne Bellamy's death. We therefore hold that this statement was not evidence of a crime committed by appellant, and it was not error to admit it in evidence. This exception is overruled.

## ADMISSION OF SEIZED EVIDENCE

Appellant argues that the trial judge erred in admitting a pair of shoes which were seized from a trailer belonging to Donald Gaskins, and a gun and other items which were seized from Gaskins at the time of his arrest. Appellant contends that this evidence was the fruit of illegal searches, and that the court's failure to exclude it violated his Fourth Amendment rights. Since we are of the opinion that appellant lacks standing to challenge the admissibility of the seized items, we need not determine whether the items were unlawfully seized.

In *Brown v. United States,* 411 U. S. 223, 93 S. Ct. 1565, 36 L. Ed. (2d) 208 (1973), the Supreme Court held that petitioners there lacked standing to contest a search and seizure where they

"(a) were not on the premises at the time of the contested search and seizure; (b) alleged no proprietary or possessory interest in the premises; and (c) were not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure." 93 S. Ct. at 1569.

Appellant has alleged no possessory or proprietary interest in the shoes or gun which were seized. Neither does he allege that he was on the premises at the time the searches and seizures occurred. Finally, the State's case against appellant does not depend upon his possession of the seized evidence at the time of the search and seizure. We therefore hold that appellant lacks standing to contest the admissibility

of the disputed evidence, and that his rights were not violated by its admission in evidence.

Appellant's final exception charges that the statute under which he was sentenced to death, *S. C. Code* § 16-52 (1962), *as amended* (Supp. 1975) [1], is unconstitutional under *Woodson v. North Carolina,* 428 U. S. 280, 96 S. Ct. 2978, 49 L. Ed. (2d) 944 (1976). Appellant's contention was decided favorably to him in *State v. Rumsey,* 267 S. C. 236, 226 S. E. (2d) 894 (1976).

We affirm appellant's conviction of murder, and remand the case for the purpose of resentencing appellant to life imprisonment.

Affirmed in part, and

Remanded.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.

---

[1] Now codified as § 16-3-20 of the 1976 Code (Supp. 1977).