534 S.E.2d 15

**The STATE, Respondent,**

v.

**Denise Gail BUCKNER, Appellant.**

**No. 3192.**

Court of Appeals of South Carolina.

Submitted April 5, 2000.

Decided June 12, 2000.

Rehearing Denied Sept. 2, 2000.

Senior Assistant Appellate Defender Wanda H. Haile, of SC Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh and Senior Assistant Attorney General Normal Mark Rapoport, all of Columbia;  and Solicitor Robert M. Ariail, of Greenville, for respondent.

SHULER, Judge:

A jury convicted Denise Gail Buckner on one count of unlawful use of the telephone.  The trial court sentenced her to two years in jail suspended upon service of three months

and two years probation. Buckner appeals, arguing the trial court erroneously charged the law on the crime of unlawful use of the telephone. We reverse and remand.

The charges in this case arose from a dispute between Deidre Carter, a deputy sheriff with the Greenville County Sheriff's Department, and Buckner. Buckner and Carter had known each other when both played on the same basketball team at the YWCA. Buckner's and Carter's dislike for each other arose when Carter started dating Nancy Johnson, a woman Buckner had previously dated for five years. Johnson and Buckner remained friends, however, while Carter and Johnson dated.

On March 27, 1997, two sheriff's deputies pulled over Buckner's car in an effort to arrest her for driving while under suspension (DUS). Buckner was still on probation for an earlier DUS conviction. The driver of the car, however, was not Buckner but rather her roommate, Sharia Clinkscales. Clinkscales informed Buckner of the incident.

Between eleven o'clock and twelve noon on that same day, the following telephone call was left on Carter's answering machine:

You know what you little insecure son-of-a-bitch. You are so fucking worried about me that you can't fucking sleep at (inaudible) night. But you know what, it's on now. You are trying to cause more problems for me, okay. You told my probation officer that shit that I'm still driving. If I'm still driving, to stop me, have somebody stop me if you see me. Because you know what, I hope when you and that little bastard motherfucking child of yours eat tonight, I hope you motherfuckers is poisoned, I hope you fucking die, bitch.

Carter turned the tape over to the police, who arrested Buckner for unlawful use of the telephone, a felony punishable by up to ten years imprisonment.

At trial, Buckner contended a friend of hers named Regina actually placed the call. Several witnesses testified, however, that it was Buckner's voice on the answering machine tape. The jury found Buckner guilty and she was sentenced to two years imprisonment suspended on service of 90 days and two years probation. This appeal followed.

## LEGAL ANALYSIS

In June 1999 Buckner's appellate counsel filed a brief pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), asking to be relieved as counsel. The only issue briefed was whether the trial court erred in failing to grant Buckner's motion for a directed verdict at the close of the State's case. On December 8, 1999, this court ordered the parties to brief the following issue:

> Whether the trial court's instructions to the jury, which included definitions of "lewd," "lascivious," "indecent," "vulgar," and "immoral" were proper in light of *State v. Brown,* 274 S.C. 506, 266 S.E.2d 64 (1980).

In *Brown,* our supreme court addressed the constitutionality of South Carolina Code section 16–17–430(A)(1). In ruling the statute was not unconstitutionally vague or overbroad, the court narrowly construed the statute to prohibit "only calls initiated by one with the intent and sole purpose of conveying an unsolicited obscene, imminently threatening and/or harassing message to an unwilling recipient." *Brown,* 274 S.C. at 508, 266 S.E.2d at 65.[1]

When instructing the jury, the trial court charged the following:

> ... The defendant is charged in the bill of indictment with unlawful use of telephone.... [The statute] reads in pertinent part as follows: It is unlawful for a person to use in a telephonic communication any words or language of a profane, vulgar, lewd, lascivious, or an indecent nature, or to threaten in a telephonic communication any unlawful act with the intent to coerce, intimidate, or harass another person, or to communicate or convey by telephone an obscene, vulgar, indecent, profane, suggestive, or immoral message to another person.

---

1. Without the limiting instruction the statute is vague and overbroad, as the words vulgar, profane, immoral, and indecent are all substantially overbroad. *See Walker v. Dillard,* 523 F.2d 3 (4th Cir.1975) (holding that absent limiting construction of statute proscribing vulgar or profane language, statute was unconstitutional because it was facially and substantially overbroad); *Radford v. Webb,* 446 F.Supp. 608 (W.D.N.C. 1978) (same).

In order to find the defendant guilty of unlawful use of the telephone you must find that the State ... proved ... that the defendant herself made a phone call with the intent and sole purpose of conveying an unsolicited, obscene, imminently threatening and/or harassing message to an unwilling [recipient].

The judge then proceeded to define the terms within the statute as follows:

I charge you, the word lascivious means tending to excite lust, lewd, indecent, obscene, sexual impurity, tending to deprave morals in respect to sexual relations ... [and] that the word lewd means obscene, lustful, indecent, lecherous. The term imports a lascivious intent. It signifies that form of immorality which has relation to moral impurity. . . .

I charge you profanity is defined as irreverence towards sacred things, particular[ly] an irreverent or blasphemous use of the name of God, vulgar, irreverent or course language.

I charge you that the term indecent means offensive to common propriety, offending against modesty or delicacy, grossly vulgar, obscene, lewd, unseemingly becoming or unfit to be heard.

I charge you indecent means such as are—indecent publications means such as are offensive to modesty and delicacy.

I charge you the term vulgar means lack of cultivation or refinement.

I charge you immoral means contrary to good morals or inconsistent with the rules and principles of morality.

After excusing the jury, the trial court asked if there were any objections to the jury charge. Counsel for Buckner stated that she believed the South Carolina Supreme Court had limited the language of the statute and that the charge as given to the jury was erroneous. The State responded that it thought the judge had charged the correct and current law. The trial court agreed, stating, "I think it was an appropriate charge. I deny the motion."

The trial judge is required to charge the current and correct law of South Carolina. *State v. Foust,* 325 S.C. 12, 479 S.E.2d 50 (1996). Jury instructions should be considered as a

whole, and if as a whole they are free from error, any isolated portions which may be misleading do not constitute reversible error. *State v. Sims*, 304 S.C. 409, 405 S.E.2d 377 (1991). The substance of the law is what must be instructed to the jury, not any particular verbiage. *State v. Rabon*, 275 S.C. 459, 272 S.E.2d 634 (1980).

■ In the present case, the trial judge not only charged the statute but defined all of the statutory terms. In light of the supreme court's opinion in *State v. Brown*, the trial court erroneously charged the law on the offense of unlawful use of the telephone. While we note that the charge contained both the correct and incorrect law as it relates to the crime of unlawful use of a telephone, we do not find the error to be harmless.

■ Where the charge contains both the correct and incorrect law, an appellate court must assume the jury followed the incorrect charge. *State v. Taylor*, 323 S.C. 162, 473 S.E.2d 817 (Ct.App.1996) (citing *People v. Hess*, 214 Mich.App. 33, 543 N.W.2d 332 (1995)). Moreover, in determining whether the error was harmless, we must determine beyond a reasonable doubt that the error complained of did not contribute to the verdict. *State v. Andrews*, 324 S.C. 516, 479 S.E.2d 808 (Ct.App.1996). We must review the facts the jury heard and weigh those facts against the erroneous jury charge to determine what effect, if any, it had on the verdict. *State v. Jefferies*, 316 S.C. 13, 446 S.E.2d 427 (1994). In making a harmless error analysis, our inquiry is not what the verdict would have been had the jury been given the correct charge, but whether the erroneous charge contributed to the verdict rendered. *Id.*

When examining the facts of this case, we find the erroneous charge contributed to the verdict. In reviewing the telephone call, it is clear that the telephone call contained vulgar, profane, indecent, and immoral language as defined by the trial judge. In order to be convicted under the statute, however, the telephone call must be made with the intent and sole purpose of conveying an unsolicited obscene or imminently threatening message or made to harass the recipient. When reviewing the jury charge, it is clear that the trial judge lowered the burden necessary for the jury to find Buckner

guilty, as under his charge, the phone call only had to contain one "indecent" or "immoral" word for the jury to convict Buckner. Accordingly, we reverse Buckner's conviction and remand for a new trial.

**REVERSED AND REMANDED.**

CONNOR and HOWARD, JJ., concur.