577 S.E.2d 225

**The STATE, Respondent,**

v.

**James VANG, Appellant.**

**No. 3587.**

Court of Appeals of South Carolina.

Heard Nov. 7, 2002.

Decided Jan. 6, 2003.

Rehearing Denied Feb. 26, 2003.

82

Paige Weeks Johnson and James E. Whittle, Jr., both of Aiken; for Appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Tracey C. Green, all of Columbia; and Solicitor Barbara R. Morgan, of Aiken; for Respondent.

HEARN, C.J.:

James Vang was convicted of murder, conspiracy to commit armed robbery, and armed robbery. He appeals arguing he is entitled to a new trial. We affirm.

## FACTS

On June 23, 1997, James Vang, Curtis Kesl, Kai Yang, and Ae Khingratsaiphon drove from Charlotte, North Carolina to Aiken, South Carolina to rob the Southside Pawn Shop. The original plan was for Yang to handcuff Carlton Ennis, the owner of the store, and rob him at gunpoint. However, once the men were in the store, Yang did not follow through on the plan and exited the store. The men left the scene and decided to drive around. While driving, Ae stated he would go in the store and kill Ennis.

The men then returned to the store and Ae reentered the pawnshop armed with a gun. The other three remained in the car. Vang told Yang to go get Ae, and when the two did not exit, Vang entered the store as well. Vang saw Yang standing by the video poker machines and joined him. Ennis approached them and told them they were too young to play the machines. While Ennis addressed the men, Ae approached him from behind and shot him in the back of the head. Ae threw a bag to Vang and told him to take the guns from the

store. Vang collected the guns and the men left the shop and returned to Charlotte. They were arrested the next day.

Vang was charged with murder, conspiracy to commit armed robbery, armed robbery, and possession of a firearm or a knife during the commission, or attempted commission, of a violent crime. Vang was tried and convicted on the murder, armed robbery, and conspiracy to commit armed robbery charges; however, the trial judge directed a verdict on the possession of a firearm charge. Vang argues he is entitled to a new trial based on any one of the following grounds: (1) a State's witness made a prejudicial statement in the jury's presence; (2) the trial court failed to individually question each juror following the receipt of an allegedly prejudicial note from the foreperson; (3) the trial court incorrectly charged the jury on the law of withdrawal from a conspiracy; (4) the trial court erred in admitting a prejudicial and inflammatory photograph; and (5) the trial court failed to conduct an individual voir dire of the members of the jury.

## LAW/ANALYSIS

### I. Prejudicial comment made by State's witness

During the State's questioning of Lieutenant Robert Anderson, the solicitor asked whether Anderson took a statement from Vang. While describing the circumstances of taking Vang's statement, Anderson said, "Ms. Poteat, [Vang's] attorney, accompanied me to Columbia where [Vang] was being held in the Department of Juvenile Justice." Vang's counsel objected to this comment on the basis that it showed Vang was incarcerated and created an unduly prejudicial inference to the jury that Vang is "a criminal." The trial judge overruled the objection, but cautioned the solicitor to not place any undue focus on the fact that Vang was at the Department of Juvenile Justice (D.J.J.) when the statement was given.

Vang argues the trial judge erred by not sustaining the objection and issuing a curative instruction. Vang asserts he is entitled to a new trial because the jury was improperly influenced by Anderson's remark. We disagree.

The admission or rejection of testimony is within the sound discretion of the trial judge and will not be overturned

absent a showing of abuse of discretion, legal error, and prejudice to the appellant. *South Carolina Prop. & Cas. Guar. Ass'n v. Yensen,* 345 S.C. 512, 524, 548 S.E.2d 880, 886 (Ct.App.2001). A jury must consider the totality of the circumstances under which a statement was given to determine whether it was voluntarily made. *See State v. Torrence,* 305 S.C. 45, 52, 406 S.E.2d 315, 319 (1991) ("[T]he jury should be instructed that they must find beyond reasonable doubt that the statement was freely and voluntarily given under the totality of the circumstances before the statement may be considered.") Accordingly, the trial judge did not abuse his discretion because the jury must consider the totality of the circumstances surrounding Vang's statement—including the setting in which it was made—to assess its credibility and whether it was voluntarily made. *Id.*

Nor do we find that Vang was unfairly prejudiced by Anderson's statement. This evidence was cumulative to other testimony that was admitted. Prior to this trial, Vang testified as a witness during Ae's criminal trial. Vang's former testimony, which was read into evidence during his trial without objection, indicated he was held in custody at D.J.J. Because this testimony is cumulative to Anderson's statement, we find any error harmless. *See State v. Griffin,* 339 S.C. 74, 77–78, 528 S.E.2d 668, 670 (2000) ("There is no reversible error in the admission of evidence that is cumulative to other evidence properly admitted.").

## II. Jury deliberations

During Vang's trial, the judge received a note from the foreperson of the jury asking, "Are our addresses confidential? Do the families have access to our addresses?" The judge immediately stopped the proceedings and questioned the foreperson in chambers. This discussion was made part of the record. The discussion revealed members of the jury were concerned about being followed upon leaving the courthouse. The foreperson also indicated some members had expressed their discomfort with having to enter the court by walking by "the Oriental [sic] family" because the family looked at them as they walked by. Significantly, the judge specifically inquired as to whether the comments arose as a result of the

members discussing the evidence in the case, and the foreperson twice indicated that it did not.

Vang, who is Asian, contends that the questioning between the judge and the foreperson revealed a potential jury bias against Asians and the judge should have individually questioned the jurors to determine if any bias existed. Vang also contends the judge should have questioned each juror individually to determine if the jury was participating in premature deliberations. Vang argues that the judge's failure to individually question the jurors after receiving the note is error and entitles him to a new trial. We disagree.

■ This issue is not preserved. When the trial judge reentered the courtroom he stated, "I have shared with the attorneys the impressions I have of the *in-camera* matter. I have stated that I would permit them to have the transcription read back. Both have indicated to me that they are satisfied with what I communicated to them and they do not desire any further inquiry related to [the *in-camera* matter]." Vang's counsel failed to object to this ruling and counsel did not request individual questioning of the jurors at this time. Thus the issue is not preserved for our review. *See State v. Aldret,* 333 S.C. 307, 312, 509 S.E.2d 811, 813 (1999) (to preserve an issue of juror misconduct for appellate review a party must object at the first opportunity at trial).

### III. Withdrawal charge

Vang's principal defense during the trial was that he withdrew from the plan and Ae acted independently when he shot Ennis. The trial judge charged the jury on the law of withdrawal, and when doing so, added language which had not previously been charged in South Carolina. The trial judge added the statement, "A person who continues in the common design cannot claim withdrawal." Vang argues this statement is an inaccurate statement of law that misinformed the jury and resulted in prejudice to him. We disagree.

■ A trial judge is required to charge the correct and current law of South Carolina. *State v. Buckner,* 341 S.C. 241, 246, 534 S.E.2d 15, 18 (Ct.App.2000). "Jury instructions should be considered as a whole and if as a whole they are free from error, any isolated portions which may be mislead-

ing do not constitute reversible error." *Id.* at 246–247, 534 S.E.2d at 18. The law of withdrawal is set forth in *State v. Woods,* 189 S.C. 281, 288, 1 S.E.2d 190, 193–94 (1939), which states that one who has entered a common design to commit a crime escapes responsibility for the acts of his associates " . . . if, before the [crime] is committed, he withdraws entirely from the undertaking, and the fact of his withdrawal is communicated to his associates, under such circumstances as would permit them to take the same action."

■ Viewed in its entirety, we believe the trial court properly charged the jury on the law of withdrawal. The judge stated,

> If a person completely withdraws from the common design or plan and communicates his withdrawal to his associates under circumstances that permit the associates to withdraw, then the person escapes criminal responsibility for the acts of the associates.

> However, if the withdrawal was not communicated to a particular associate or if that associate did not have an opportunity to withdraw after the communication, then the person remains responsible for the actions of that associate that were the natural and probable consequences of the common design.

> Now the law requires that a person involved in a common design must withdraw entirely and completely from it and must communicate that withdrawal to his associates. *A person who continues in the common design cannot claim withdrawal.* It's the burden of the State to prove that the defendant had not withdrawn from an unlawful common design or plan at the relevant time.

(emphasis added).

The trial judge justified charging the additional language stating that without the language, the charge would be misleading to the jury under the particular facts of this case. The judge indicated that without this language, the charge might be interpreted as relieving one's criminal liability upon communicating his withdrawal from the common plan, even if he subsequently reentered the plan.

 Here the jury could have believed Vang initially withdrew from the plan but subsequently resumed the plan when he went back into the store with Ae and Yang. We agree with the trial judge that the additional language was necessary under these circumstances to avoid misleading the jury about whether Vang entirely withdrew from the plan. The *Woods* charge requires a person to withdraw entirely and unequivocally from the plan throughout the commission of the entire plan and to communicate his withdrawal to all of the associates involved in the plan. *Woods,* 189 S.C. at 288, 1 S.E.2d at 193–94. The trial judge's additional sentence does not state the law any differently. The substance of the law is what must be communicated to the jury, not any particular words. *State v. Hughey,* 339 S.C. 439, 450, 529 S.E.2d 721, 727 (2000). Therefore, we find no error in the charge.

 Vang further argues the jury charge shifted the burden to Vang to prove he withdrew and did not continue in the execution of the plan. The final sentence of the judge's charge clearly communicates that the State bears the burden to show that Vang had continued in the execution of the plan. The State presented evidence upon which the jury could infer Vang remained involved in the plan by stealing the guns from the store after Ennis was shot. Accordingly, there was no error in the charge.

## IV. Admissibility of the Photograph

Vang next argues the trial judge erred by allowing the admission of a photograph depicting the shell casing of the fatal shot close to Ennis's head. Vang argues the photograph was cumulative to other photographs admitted into evidence, did not corroborate the testimony of any witness, and was introduced solely to arouse the passion and prejudices of the jury. We find no error.

 "The relevance, materiality and admissibility of photographs are matters within the sound discretion of the trial court and a ruling will be disturbed only upon a showing of an abuse of discretion." *State v. Rosemond,* 335 S.C. 593, 596, 518 S.E.2d 588, 589–90 (1999). "The trial judge must balance the prejudicial effect of graphic photographs against their probative value. To constitute unfair prejudice, the

photographs must create a 'tendency to suggest a decision on an improper basis, commonly, though not necessarily an emotional one.'" *Hughey*, 339 S.C. at 460, 529 S.E.2d at 732. A test to determine whether the trial judge abused his discretion is whether the photographic evidence serves to corroborate the testimony of witnesses offered at trial. "If the photograph serves to corroborate testimony, it is not an abuse of discretion to admit it." *Rosemond*, at 597, 518 S.E.2d at 590.

Pursuant to a motion in limine, the trial judge initially excluded the photograph because it was cumulative to another photograph that showed the shell casing. However, the trial judge acknowledged the ruling was only preliminary. At trial, the State sought to introduce the photograph to allow a firearms expert to opine the general type of the gun used from the location of the shell casing in relationship to the body. The State argued the photograph in question better depicted the placement of the shell casing as compared to the other photograph admitted by the court. The pathologist testified the position of the body and of the shell casing in relation to the body corroborated her finding that the gunshot was a close contact wound.

We have reviewed the photograph and find no abuse of discretion in its admission into evidence. The trial judge initially denied its admissibility but reevaluated the photograph in the context of the testimony of the witnesses and found the photograph served to corroborate the testimony offered by the firearms expert and the pathologist. Because the photograph corroborated this testimony, it was not an abuse of discretion to admit it. *Id.*

### V. Individual voir dire of the jurors

Vang argues the trial judge erred by failing to individually question each juror on matters of racial prejudice and bias, and by failing to ask nineteen voir dire questions requested by Vang. We disagree.

During voir dire, the trial judge informed the jurors that they could come forward and speak personally to him when answering any of the voir dire questions if discussing the matter openly would cause them embarrassment. Subsequently, the trial judge asked the jury venire, "Ladies and

gentlemen, do any of you have any biases or prejudices that would cause you to favor or disfavor any person associated with this case in any way, based upon that person's race? If so, please stand." No one stood in response.

The trial judge is statutorily required to ask the jurors whether they are related to either party, have any interest in the cause, have expressed or formed an opinion, or know of any bias or prejudice to either party. S.C.Code Ann. § 14–7–1020 (Supp.2001). Specific individual questions designed to reveal racial prejudices of the particular juror are required only when "special circumstances" exist. *State v. Cason,* 317 S.C. 430, 432, 454 S.E.2d 888, 889 (1995). A special circumstance exists when race is an integral part of the case. *Id.* However, "[a] special circumstance ... does not exist ... when the only racial fact in the case is that the defendant and the victim are of different races." *Id.* at 432, 454 S.E.2d at 889–90. In the absence of special circumstances, the questions asked pursuant to the statute during general voir dire are sufficient to determine the existence of bias or prejudice. *Id.* at 432, 454 S.E.2d 888 454 S.E.2d at 889. The manner and scope of any additional voir dire questions are in the trial judge's discretion. *State v. Patterson,* 324 S.C. 5, 16, 482 S.E.2d 760, 765 (1997). "[A]s a general rule, the trial court is not required to ask all voir dire questions submitted by the attorneys." *Wall v. Keels,* 331 S.C. 310, 318, 501 S.E.2d 754, 757 (Ct.App.1998).

In this case, the difference in race between the victim and the defendant was the only racial fact before the court; therefore, no special circumstances existed requiring individual questioning of the jurors. Accordingly, the trial judge fulfilled his obligation upon asking the statutorily required questions, which included the question regarding bias and prejudice. *Cason,* 317 S.C. at 432, 454 S.E.2d at 889.

Moreover, upon reviewing Vang's propounded questions, we find the trial judge's voir dire encompassed the relevant scope of the propounded questions. Therefore, no harm resulted to Vang from the trial judge's refusal to ask the specific voir dire questions. It was entirely within the trial judge's discretion to decide the manner and scope of the voir dire and we find no abuse of that discretion.

## CONCLUSION

We find no merit to any of the arguments raised on appeal. Accordingly, for the foregoing reasons, Vang's convictions are **AFFIRMED.**

GOOLSBY and ANDERSON, JJ., concur.