567 S.E.2d 904

**The STATE, Respondent,**

v.

**Ricky Clyde LEDFORD, Appellant.**

**No. 3535.**

Court of Appeals of South Carolina.

Heard June 4, 2002.

Decided July 15, 2002.

Rehearing Denied Aug. 22, 2002.

Certiorari Denied Jan. 8, 2003.

84

Senior Assistant Appellate Defender Wanda H. Haile, of South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson and Assistant Attorney General Melody J. Brown, of Columbia; Solicitor Robert M. Ariail, of Greenville, for respondent.

HEARN, Chief Judge:

Ricky Ledford appeals his conviction for driving under the influence (DUI), fourth offense. We reverse.

## FACTS

On September 30, 1999, at approximately 7:00 a.m., Patty Channell and Damon Duncan were sitting in Channell's car at an intersection. Duncan noticed a white Buick approach the intersection at a high rate of speed and cautioned Channell not to enter the intersection. The Buick entered the intersection, swerved to miss another car, and collided with Channell's car. The Buick then left the accident scene; Duncan, however, recorded the Buick's tag number and gave it to the investigating officer, Johnathan Craig.

After running a check on the tag number, Officer Craig learned the Buick was registered to Willie Ledford. When Officer Craig went to Willie Ledford's residence, he learned she had loaned the car to her son, Ricky Ledford. Officer Craig went to the house where Ms. Ledford said her son could be found and discovered the Buick pulled into a large shrub with a carpet covering its back end. Officer Craig got permission from a resident to enter the house and found Ricky Ledford "passed out" and slumped over on a couch, smelling strongly of alcohol. He attempted to awaken Ledford to question him about the accident; however, Ledford drifted in and out of consciousness. While in the house, Officer Craig informed Ledford they would need to return to the accident scene. Officer Craig testified that as they were leaving the house, Ledford

started falling down toward the ground all together. So at that point, I kind of had to pick him up. I guess the way I describe it is like a groomsman carrying a bride across the threshold, you know, to kind of pick him up like that to carry him to my car where I got out there where I could prop him up, stand him up and prop him up on the hood of the car.

During one of Ledford's brief periods of consciousness, Officer Craig asked him whether he had anything to drink since the accident, to which Ledford allegedly answered "no." Officer Craig stated, "At that time I had to lean [Ledford] over the hood of my car, just kind of lay him up on it, droop him over so I could unlock the passenger side ... and he just slumped over the whole time." Officer Craig then handcuffed Ledford, secured him in the passenger's seat, and drove him back to the accident scene where Duncan and Channell positively identified Ledford as the driver of the Buick. At that point, Officer Craig placed Ledford under arrest and read him his *Miranda* rights.

Prior to trial, Ledford objected to the admission of his statement to Officer Craig. He argued he could not have made a voluntary statement drifting in and out of consciousness while being carried to Officer Craig's patrol car. The trial court ruled the statement was admissible without holding a hearing to determine whether it was voluntarily made, and found that any inquiry into whether the statement was voluntarily made in light of Ledford's mental state at the time was "an issue for the jury." Ledford further argued he could not have waived his *Miranda* rights because they were not given to him before he made the statement. The State took the position Ledford was not in custody when he made the statement. The trial court declined to conduct an evidentiary hearing outside the presence of the jury to determine whether Ledford was in custody at the time he gave the statement, again finding the issue was for the jury.

## DISCUSSION

Ledford first asserts the trial court erred in failing to hold a hearing outside the presence of the jury to determine the

voluntariness of his statement pursuant to *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). We agree.

 Generally, a criminal defendant is entitled to an independent evidentiary hearing outside the presence of the jury to challenge the introduction of evidence "that was allegedly obtained by conduct violative of the defendant's constitutional rights." *State v. Patton,* 322 S.C. 408, 410, 472 S.E.2d 245, 247 (1996) (quoting *State v. Blassingame,* 271 S.C. 44, 47–48, 244 S.E.2d 528, 530 (1978)). If the State seeks to introduce a defendant's statement into evidence, the trial court is charged with making an initial determination, through an evidentiary hearing, as to whether the statement was voluntarily made. *State v. Washington,* 296 S.C. 54, 55–56, 370 S.E.2d 611, 612 (1988). "The trial judge's determination of the voluntariness of a statement must be made on the basis of the totality of the circumstances, including the background, experience and conduct of the accused." *State v. Franklin,* 299 S.C. 133, 138, 382 S.E.2d 911, 914 (1989).

 In this case, we find the evidence necessitated a voluntariness hearing pursuant to *Jackson v. Denno.* The record reveals that Ledford was in and out of consciousness during the time in which he answered Officer Craig's question and Ledford's attorney clearly objected to its admission. The trial court's summary ruling that Ledford's ability to answer any questions was "an issue for the jury," failed to resolve the issue of whether or not the statement was voluntary. As such, we agree with Ledford that the trial court erred in failing to make an initial determination as to the voluntariness of the statement. Moreover, we find great potential for prejudice in the admission of Ledford's statement. The admission that he did not have anything to drink after the accident was a determining issue, particularly in light of Ledford's testimony at trial that he drank two beers and took two Xanax pills after the accident.

Ledford also argues that the trial court erred in failing to hold a hearing to determine whether the statement was given in violation of the mandates of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We agree.

If a defendant makes a custodial statement, then the trial court must not only make an inquiry into the voluntariness of the statement, but also conduct an inquiry to ensure the police complied with the mandates of *Miranda* and its progeny. *Franklin*, 299 S.C. at 136–37, 382 S.E.2d at 912–13. "*Miranda* warnings are required for official interrogations only when a suspect 'has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *State v. Easler*, 327 S.C. 121, 127, 489 S.E.2d 617, 621 (1997) (quoting *Miranda*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). "Interrogation is either express questioning or its functional equivalent. It includes words or actions on the part of police that the police . . . should know are reasonably likely to elicit an incriminating response." *State v. Kennedy*, 333 S.C. 426, 431, 510 S.E.2d 714, 716 (1998)). In contrast to the subjective nature of a voluntariness inquiry, custody is determined by an objective analysis of "whether a reasonable man in the suspect's position would have understood himself to be in custody." *Id.* at 128, 489 S.E.2d 617, 489 S.E.2d at 621. Finally, our review of the trial court's custody ruling "is limited to a determination of whether the ruling by the trial court is supported by the testimony." *State v. Easler*, 322 S.C. 333, 342, 471 S.E.2d 745, 751 (Ct.App. 1996), *aff'd as modified*, 327 S.C. 121, 489 S.E.2d 617 (1997).

The State submits that *Miranda* warnings were not required under the circumstances of this case because Officer Craig was merely conducting an investigation of the accident, not a custodial interrogation. However, our review of the record convinces us otherwise. Because Ledford could not walk, Officer Craig literally carried him from the house to his patrol car. Officer Craig questioned Ledford as he was propping him up on the hood of his patrol car and preparing to handcuff him and place him inside the car. Thereafter, the officer drove him to the scene of the accident to be identified by the victims. We find it difficult to conceive of another set of circumstances which would create a more unequivocal custodial posture than when a person is physically carried from a residence to a patrol car where he is handcuffed. Furthermore, we find that Officer Craig embarked on a custodial interrogation when he began questioning Ledford after exiting the house, in an effort to obtain incriminating information.

*Kennedy*, 333 S.C. at 431, 510 S.E.2d at 716. Therefore, we find that under any view of the evidence Ledford was entitled to *Miranda* warnings.

Although the State maintained that Ledford was not in custody, it conceded during oral argument that if this court were to find that Ledford was in custody at the time of questioning, then reversal would be mandated. Thus, in light of our finding that Ledford was entitled to *Miranda* warnings and the State's concession during oral argument, we reverse.[1]

**REVERSED.**

HUFF and HOWARD, JJ., concurring.

---

1. In light of our disposition, we need not reach Ledford's remaining issues on appeal.