652 S.E.2d 444

The STATE, Respondent,

v.

Marshall MILLER, Appellant.

No. 4307.

Court of Appeals of South Carolina.

Heard Oct. 10, 2007.

Decided Oct. 19, 2007.

374

Deputy Chief Attorney for Capital Appeals Robert M. Dudek, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Chief, State Grand Jury, Jennifer D. Evans, and Assistant Attorney General, State Grand Jury, DeWayne Pearson, all of Columbia, for Respondent.

ANDERSON, J.

Marshall Miller ("Miller") appeals his conviction for conspiracy to traffic methamphetamine, arguing the trial judge erred by: (1) admitting incriminating oral and written statements, which he claims were given as the result of promises of leniency; and (2) denying his motion to enforce an alleged eight-to-twelve-year plea agreement. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

In November 1999, local authorities began investigating a large methamphetamine conspiracy, referred to as "Crankdown." The State Law Enforcement Division ("SLED") began its investigation in 2002.

On September 10, 2002, the statewide grand jury indicted Miller and fourteen other individuals for conspiracy to traffic more than 100 grams of methamphetamine. Miller was arrested on September 24, 2002. Subsequently, Frank O'Neil, a SLED agent, attempted to obtain a statement from Miller. O'Neil declared the attempt was not fruitful because Miller only informed the agent about other people involved, not Miller's own involvement.

O'Neil averred defense attorney Kim Varner said Miller was willing to cooperate fully. As a result, O'Neil arranged for Miller to be interviewed by SLED agents Chester Bragg and Constance Sonnefeld. Bragg and Sonnefeld conducted three interviews with Miller. The first debriefing occurred on February 13, 2003, at the Laurens City Police Department. Bragg established that Miller was advised of his rights. He was coherent and not threatened in any way. Both agents professed that no plea agreements or promises of leniency were made during the meeting.

The second and third interviews between Marshall and SLED officers were conducted on February 25, 2003, and March 4, 2003. During all three sessions, Miller orally provided information concerning the methamphetamine conspiracy. At trial, Bragg confirmed Miller admitted using, "cooking," (making methamphetamine), and distributing methamphetamine. Additionally, Miller voluntarily provided Bragg with a handwritten, thirty-six page document prior to the second interview. This document listed names of various "cooks,"

locations where methamphetamine could be purchased, "cook" sites, people who assisted in "cooking" methamphetamine, charges of police misconduct, an illegal poker house, and various other related and non-related information.

Prior to trial, the court conducted a hearing pursuant to *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), to determine the voluntariness and admissibility of Miller's oral and written statements. The following colloquy occurred during the cross-examination of agent O'Neil at the *Denno* hearing:

Q: When you initially sat down with Mr. Miller, not saying there was an agreement or anything, but was there a general discussion with Mr. Miller that if he would admit his involvement and fully cooperate that it was a possibility, not an agreement, that he could get a sentence of approximately fifteen years?

A: No.

Q: Okay. Was there any discussion of fifteen years at that point in time? I'm not saying an agreement, but a general discussion?

A: I told Mr. Miller that all he could do by cooperating was help himself, it was not going to hurt him. I did not refer to a particular time or to a sentence that he could possibly receive. I repeated several times, as I always do, that it's up to the judge that handles the case.

Varner testified on Miller's behalf during the *Denno* hearing and claimed Assistant Attorney General Jennifer Evans orally promised a plea deal of eight to twelve years in exchange for Miller's guilty plea and full cooperation with the investigation. However, Varner admitted he never memorialized the promise in writing. Varner contended Miller gave statements to authorities in reliance on the alleged eight-to-twelve-year deal. Although Varner averred he communicated the details of the agreement to Miller in front of Bragg and Sonnefeld, neither agent recalled the number of years being mentioned. The following colloquy occurred during the cross-examination of Bragg at the *Denno* hearing:

Q: And whether I misunderstood it or whether it was correct or not, do you recall me telling Marshall Miller, "Marshall, I just got off the phone with Jennifer [Evans].

If you.testify or you give your cooperation," that, "you are in the eight to twelve range and expect twelve . . . you don't have to do this, this is your choice, you're freely and voluntarily entering into this, this is going to be your decision if you will take that range," whether I misunderstood my statement with [Evans] or whether that was correct or even if that was a lie, do you recall me making the statement to [Miller] to that effect?

A: I do not recall any numbers being mentioned at all.

To the same line of questioning, Sonnefeld responded, "I don't remember numbers. I remember that if he cooperated it would be taken into consideration."

Evans explained the only offer she extended was a formal, written plea agreement with a fifteen-year sentence. She denied offering a plea with a sentence in the range of eight to twelve years. In contrariety, Varner asserted Miller would not have provided information for a fifteen-year deal. "[Miller] has been in jail a couple of times, this gentleman is very jailhouse smart, he does know how to handle himself in that respect, he's very familiar with the system, so to speak. . . ." The following colloquy occurred during the direct examination of Evans:

A: The only time we ever make plea offers is when we send out formal written plea offers. What we do, we explain to them what we expect with cooperation, which is full cooperation, full debriefing, cooperation throughout the investigation, and at that point there is nothing promised except for the fact that we will take that cooperation into account. Mr. Miller was indicted for a 25 year offense . . . we do explain to them there is really no way you can hurt yourself at this point, that we take the cooperation into account in determining a sentence, but I don't discuss sentencing and I don't discuss what they would be, because I don't know at that point what they know and if they are going to be fully honest with us.

Q: So, it would be safe to say, then, you have to get all the information from the defendant before you can even determine what offer you want to make them?

A: That is certainly the course of action that we do in all of our Grand Jury cases.

Q: And is this particular instance did you make a written plea offer?

A: Yes, I did.

The written plea offer was sent to Miller on April 29, 2003, in which the State offered a recommendation of fifteen years for him to plead guilty and fully cooperate. Miller had two opportunities to plead guilty but declined to do so.

Miller moved to enforce the purported eight-to-twelve-year plea agreement. The trial judge found Miller's statements were voluntary and denied his motion to enforce the plea agreement. Miller failed to appear for trial and was tried in his absence. The jury found him guilty and the trial judge imposed a twenty-five-year sentence.

## STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only. *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). Thus, an appellate court is bound by the trial judge's factual findings unless they are clearly erroneous. *Id.; State v. Preslar*, 364 S.C. 466, 472, 613 S.E.2d 381, 384 (Ct.App.2005). The appellate courts are "bound by fact findings in response to motions preliminary to trial when the findings are supported by the evidence and not clearly wrong or controlled by error of law." *Reed v. Becka*, 333 S.C. 676, 685, 511 S.E.2d 396, 401 (Ct.App.1999) (citing *State v. Amerson*, 311 S.C. 316, 320, 428 S.E.2d 871, 873 (1993)).

The trial judge determines the admissibility of a statement upon proof of its voluntariness by a preponderance of the evidence. *State v. Washington*, 296 S.C. 54, 55, 370 S.E.2d 611, 612 (1988); *State v. Smith*, 268 S.C. 349, 354, 234 S.E.2d 19, 21 (1977). The jury must determine whether the statement was freely and voluntarily given beyond a reasonable doubt. *Washington*, 296 S.C. at 55–56, 370 S.E.2d at 612. On appeal, the conclusion of the trial judge as to the voluntariness of a statement will not be reversed unless so erroneous as to show an abuse of discretion. *State v. Von Dohlen*, 322 S.C. 234, 242, 471 S.E.2d 689, 695 (1996). When reviewing a trial judge's ruling concerning voluntariness, the appellate court does not re-evaluate the facts based on its own view of

the preponderance of the evidence, but simply determines whether the trial judge's ruling is supported by any evidence. *State v. Saltz,* 346 S.C. 114, 136, 551 S.E.2d 240, 252 (2001).

## *LAW/ANALYSIS*

Miller argues his statements made to law enforcement were given in reliance upon the promise of leniency, and therefore, were involuntary and inadmissible. We disagree.

## I. Voluntariness of Statements to SLED Agents

■ The process for determining whether a statement is voluntary, and thus admissible, is bifurcated; it involves determinations by both the judge and the jury. First, the trial judge must conduct an evidentiary hearing, outside the presence of the jury, where the State must show the statement was voluntarily made by a preponderance of the evidence. *Jackson v. Denno,* 378 U.S. 368, 376, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). If the statement is found to have been given voluntarily, it is then submitted to the jury, where its voluntariness must be established beyond a reasonable doubt. *State v. Washington,* 296 S.C. 54, 56, 370 S.E.2d 611, 612 (1988).

### a. Admissibility of Statements

■ A statement obtained as a result of custodial interrogation is inadmissible unless the suspect was advised of and voluntarily waived his rights. *Miranda v. Arizona,* 384 U.S. 436, 498–500, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *State v. Saltz,* 346 S.C. 114, 136, 551 S.E.2d 240, 252 (2001). If a suspect was advised of his *Miranda* rights but made a statement, the "burden is on the State to prove by a preponderance of the evidence that his rights were voluntarily waived." *Saltz,* 346 at 135, 551 S.E.2d at 252; *State v. Rochester,* 301 S.C. 196, 200, 391 S.E.2d 244, 247 (1990); *State v. Washington,* 296 S.C. 54, 55, 370 S.E.2d 611, 612 (1988). A statement is not admissible unless it was voluntarily made. *State v. Von Dohlen,* 322 S.C. 234, 243, 471 S.E.2d 689, 694 (1996); *State v. Compton,* 366 S.C. 671, 680, 623 S.E.2d 661, 666 (Ct.App.2005); *see also State v. Childs,* 299 S.C. 471, 475, 385 S.E.2d 839, 842 (1989) ("The test of admissibility of a statement is voluntari-

ness."). This voluntariness requirement is in addition to the intelligent waiver mandate of *Miranda*. *See State v. Middleton,* 288 S.C. 21, 25, 339 S.E.2d 692, 694 (1986) ("In order to secure the admission of a defendant's statement, the State must affirmatively show the statement was voluntary *and* taken in compliance with *Miranda.*") (citations omitted). "It is now axiomatic ... that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary [statement], without regard for the truth or falsity of the [statement] ... even though there is ample evidence aside from the [statement] to support the conviction." *Jackson v. Denno,* 378 U.S. 368, 376, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

The requirement that only voluntary statements be admitted is based on the Fifth Amendment's right against self-incrimination, and was incorporated and made applicable to the States through the Fourteenth Amendment. *See Malloy v. Hogan,* 378 U.S. 1, 6, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) ("We hold today that the Fifth Amendment's exception from compulsory self-incrimination is also protected by the Fourteenth Amendment against abridgment by the States."). In *State v. Hook,* this Court explained:

> The Fifth Amendment to the United States Constitution provides, in relevant part, that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This provision governs state as well as federal criminal proceedings. *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Article 1, Section 12, of the South Carolina Constitution contains a similar provision. S.C. Const. Art. I, 12 ("... nor shall any person be compelled in any criminal case to be a witness against himself.").
>
> The Fifth Amendment does not, of course, operate as a blanket prohibition against the taking of any and all statements made by criminal defendants to law enforcement officials. Volunteered statements, whether exculpatory or inculpatory, stemming from custodial interrogation or spontaneously offered up, are not barred by the Fifth Amendment. *State v. Kennedy,* 325 S.C. 295, 307, 479 S.E.2d 838, 844 (Ct.App.1996) (citing *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)).

*State v. Hook,* 348 S.C. 401, 409–10, 559 S.E.2d 856, 860 (Ct.App.2001), *aff'd as modified,* 356 S.C. 421, 590 S.E.2d 25 (2003). We observed that the "concept that the privilege against self-incrimination encompasses the right to be free from being penalized for its exercise is well established." *Id.* at 411, 559 S.E.2d 856, 559 S.E.2d at 861 (quoting *Lefkowitz v. Cunningham,* 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977) ("[W]hen a State compels testimony by threatening to inflict potent sanctions unless the constitutional privilege is surrendered, that testimony is obtained in violation of the Fifth Amendment and cannot be used against the declarant in a subsequent criminal prosecution. . . . Similarly, our cases have established that a State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself.")). The United States Supreme Court, in *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), elucidated the rationales behind the prohibition against involuntary statements:

> It is now inescapably clear that the Fourteenth Amendment forbids the use of involuntary [statements] not only because of the probable unreliability of [statements] that are obtained in a manner deemed coercive, but also because of the "strongly felt attitude of our society that important human values are sacrificed where an agency of the government, in the course of securing a conviction, wrings a [statement] out of an accused against his will," and because of "the deep-rooted feeling that the police must obey the law while enforcing the law; that in the end life and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from the actual criminals themselves."

378 U.S. at 385–86, 84 S.Ct. 1774 (citations omitted).

### b. Voluntariness Determination

Under *Jackson v. Denno,* a defendant is entitled to a "reliable determination as to the voluntariness of his [statement] by a tribunal other than the jury charged with deciding his guilt or innocence." *State v. Fortner,* 266 S.C. 223, 226, 222 S.E.2d 508, 510 (1976). "In South Carolina, the judge

makes this initial determination of voluntariness required by *Jackson v. Denno*[.]" *Id.*

"A defendant in a criminal case is entitled to an independent evidentiary hearing to determine the voluntariness of statements made by the defendant prior to the submission of such statements to the jury." *State v. Salisbury*, 330 S.C. 250, 271, 498 S.E.2d 655, 666 (Ct.App.1998), *aff'd as modified*, 343 S.C. 520, 541 S.E.2d 247 (2001); *see also State v. Creech*, 314 S.C. 76, 84, 441 S.E.2d 635, 639 (Ct.App.1993) ("Whenever evidence is introduced that was allegedly obtained by conduct violative of a defendant's constitutional rights, the defendant is entitled to have the trial judge conduct an evidentiary hearing outside of the presence of the jury at the threshold point to establish circumstances under which it was gained."). The trial judge must determine if under the totality of the circumstances a statement was knowingly, intelligibly, and voluntarily made. *State v. Saltz*, 346 S.C. 114, 136, 551 S.E.2d 240, 252 (2001); *State v. Rochester*, 301 S.C. 196, 200, 391 S.E.2d 244, 247 (1990); *State v. Howard*, 296 S.C. 481, 488, 374 S.E.2d 284, 288 (1988); *State v. Linnen*, 278 S.C. 175, 179, 293 S.E.2d 851, 853–54 (1982); *State v. Rabon*, 275 S.C. 459, 462, 272 S.E.2d 634, 636 (1980).

The State bears the burden of showing the statement was voluntary. *State v. Von Dohlen*, 322 S.C. 234, 243, 471 S.E.2d 689, 695 (1996); *State v. Washington*, 296 S.C. 54, 55, 370 S.E.2d 611, 612 (1988); *State v. Neeley*, 271 S.C. 33, 244 S.E.2d 522 (1978); *see also State v. Middleton*, 288 S.C. 21, 24, 339 S.E.2d 692, 694 (1986) ("In order to secure the admission of a defendant's statement, the State must affirmatively show the statement was voluntary *and* taken in compliance with *Miranda*.").

In Washington, our supreme court addressed the standard of proof applicable to the *Jackson v. Denno* hearing:

> "[T]he burden is on the State to prove *by a preponderance of the evidence* that his rights were voluntarily waived." *State v. Neeley*, 271 S.C. 33, 40, 244 S.E.2d 522, 526 (1978) (Emphasis supplied).

> "[T]he prosecution must prove ... *by a preponderance of the evidence* that the [statement] was voluntary." *Lego v.*

*Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972) (Emphasis supplied).

*See also Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *State v. Middleton,* 295 S.C. 318, 368 S.E.2d 457 (1988); *In re Christopher W.,* 285 S.C. 329, 329 S.E.2d 769 (Ct.App.1985).

296 S.C. at 55, 370 S.E.2d at 612. *Accord State v. Kennedy,* 325 S.C. 295, 479 S.E.2d 838 (Ct.App.1996).

▮ During the *Jackson v. Denno* hearing, the trial judge must examine the totality of the circumstances surrounding the statement and determine whether the State has carried its burden of showing the statement was made voluntarily. *State v. Childs,* 299 S.C. 471, 475, 385 S.E.2d 839, 842 (1989); *State v. Doby,* 273 S.C. 704, 708, 258 S.E.2d 896, 899 (1979) (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). "Where there is conflicting evidence as to whether [a] defendant's statement is voluntary, it is, in the first instance the province of the trial court to determine this factual issue by the preponderance of the evidence." *Howard,* 296 S.C. at 493, 374 S.E.2d at 290; *Washington,* 296 S.C. at 56, 370 S.E.2d at 612;

▮ Once the trial judge determines that the statement is admissible, it is up to the jury to ultimately determine, beyond a reasonable doubt, whether the statement was voluntarily made. *Von Dohlen,* 322 S.C. at 243, 471 S.E.2d at 695; *State v. Callahan,* 263 S.C. 35, 41, 208 S.E.2d 284, 286 (1974) ("A [statement] is not admissible unless voluntary, and it [is] for the jury to say in the last analysis whether the [statement] [is] or [is] not voluntary."); *State v. Clinkscales,* 231 S.C. 650, 653, 99 S.E.2d 663, 664 (1957) ("Although all the evidence may be to the effect that a [statement] made while under arrest was a voluntary one, the jury may not be so convinced; and it is the jury who, in the final analysis, must determine the factual issue of voluntariness."); *State v. Brown,* 212 S.C. 237, 246, 47 S.E.2d 521, 525 (1948).

Nothing in [*Jackson v. Denno* ] questioned the province or capacity of juries to assess the truthfulness of [statements]. Nothing in that opinion took from the jury any evidence relating to the accuracy or weight of [statements] admitted into evidence. A defendant has been as free since Jackson

as he was before to familiarize a jury with circumstances that attend the taking of his [statement], including facts bearing upon its weight and voluntariness.

*Lego v. Twomey*, 404 U.S. 477, 485–86, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). Thus, the jury is entitled to consider the totality of the circumstances surrounding the statement to determine whether the statement was made voluntarily. *State v. Vang*, 353 S.C. 78, 84, 577 S.E.2d 225, 227–28 (Ct.App.2003).

[Statements], even those that have been found to be voluntary, are not conclusive of guilt.... Indeed, stripped of the power to describe to the jury the circumstances that prompted his [statement], the defendant is effectively disabled from answering the one question every rational juror needs answered: If the defendant is innocent, why did he previously admit his guilt? Accordingly, regardless of whether the defendant marshaled the same evidence earlier in support of an unsuccessful motion to suppress, and entirely independent of any question of voluntariness, a defendant's case may stand or fall on his ability to convince the jury that the manner in which the [statement] was obtained casts doubt on its credibility.

*Crane v. Kentucky*, 476 U.S. 683, 689, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (citations omitted).

### c. Totality of the Circumstances Test

The test of voluntariness is " 'whether a defendant's will was overborne' by the circumstances surrounding the given [statement]. The due process test takes into consideration 'the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation.' " *Dickerson v. United States*, 530 U.S. 428, 434, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (citations omitted); *State v. Aleksey*, 343 S.C. 20, 30, 538 S.E.2d 248, 253 (2000); *State v. Linnen*, 278 S.C. 175, 179, 293 S.E.2d 851, 853 (1982); *State v. Gillian*, 360 S.C. 433, 458, 602 S.E.2d 62, 76 (Ct.App. 2004); *see also State v. Myers*, 359 S.C. 40, 47, 596 S.E.2d 488, 492 (2004) ("A determination whether a statement was 'given voluntarily requires an examination of the totality of the circumstances.' ") (citation omitted); *State v. Compton*, 366 S.C. 671, 680, 623 S.E.2d 661, 666 (Ct.App.2005) ("The test for determining the admissibility of a statement is whether it was

knowingly, intelligently, and voluntarily given under the totality of the circumstances.") (internal quotation marks and citation omitted). " 'The trial judge's determination of the voluntariness of a statement must be made on the basis of the totality of the circumstances, including the background, experience and conduct of the accused.' " *State v. Ledford,* 351 S.C. 83, 87, 567 S.E.2d 904, 906 (Ct.App.2002) (quoting *State v. Franklin,* 299 S.C. 133, 138, 382 S.E.2d 911, 914 (1989)); *accord State v. Childs,* 299 S.C. 471, 475, 385 S.E.2d 839, 842 (1989); *State v. Corns,* 310 S.C. 546, 552, 426 S.E.2d 324, 327 (Ct.App.1992). "A jury must consider the totality of the circumstances under which a statement was given to determine whether it was voluntarily made." *State v. Vang,* 353 S.C. 78, 84, 577 S.E.2d 225, 227–28 (Ct.App.2003) (citing *State v. Torrence,* 305 S.C. 45, 52, 406 S.E.2d 315, 319 (1991) ("[T]he jury should be instructed that they must find beyond reasonable doubt that the statement was freely and voluntarily given under the totality of the circumstances before the [statement] may be considered.")).

The Supreme Court, in *Withrow v. Williams,* 507 U.S. 680, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993), set forth a non-exclusive list of factors which may be considered in the totality-of-the-circumstances analysis:

Under the due process approach ... courts look to the totality of circumstances to determine whether a statement was voluntary. Those potential circumstances include not only the crucial element of police coercion, *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473(1986); the length of the interrogation, *Ashcraft v. Tennessee,* 322 U.S. 143, 153–154, 64 S.Ct. 921, 88 L.Ed. 1192(1944); its location, see *Reck v. Pate,* 367 U.S. 433, 441, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961); its continuity, *Leyra v. Denno,* 347 U.S. 556, 561, 74 S.Ct. 716, 98 L.Ed. 948 (1954); the defendant's maturity, *Haley v. Ohio,* 332 U.S. 596, 599–601, 68 S.Ct. 302, 92 L.Ed. 224 (1948) (opinion of Douglas, J.); education, *Clewis v. Texas,* 386 U.S. 707, 712, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967); physical condition, *Greenwald v. Wisconsin,* 390 U.S. 519, 520–521, 88 S.Ct. 1152, 20 L.Ed.2d 77 (1968) *(per curiam );* and mental health, *Fikes v. Alabama,* 352 U.S. 191, 196, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957). They also include the failure of police to advise the

defendant of his rights to remain silent and to have counsel present during custodial interrogation. *Haynes v. Washington,* 373 U.S. 503, 516–517, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963)[.]

507 U.S. at 693–94, 113 S.Ct. 1745.

Appellate entities in South Carolina have recognized that appropriate factors to consider in the totality-of-circumstances analysis include: background, experience, and conduct of the accused; age; length of custody; police misrepresentations; isolation of a minor from his or her parent; threats of violence; and promises of leniency. *See Childs,* 299 S.C. at 475, 385 S.E.2d at 842 (background, experience, and conduct of the accused); *In re Williams,* 265 S.C. 295, 217 S.E.2d 719 (1975) (age); *State v. Jennings,* 280 S.C. 62, 309 S.E.2d 759 (1983) (length of custody); *State v. Rabon,* 275 S.C. 459, 461, 272 S.E.2d 634, 635 (1980) (police misrepresentations); *State v. Smith,* 268 S.C. 349, 355, 234 S.E.2d 19, 21 (1977) (isolation of minor); *State v. Rochester,* 301 S.C. 196, 200, 391 S.E.2d 244, 246 (1990) (threats of violence and promises of leniency).

■■■ Coercive police activity is a necessary predicate to finding a statement is not voluntary. *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *Linnen,* 278 S.C. 175, 293 S.E.2d 851. Coercion is determined from the perspective of the suspect. *Illinois v. Perkins,* 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990).

■■■■ A statement may not be "extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] obtained by the exertion of improper influence." *Rochester,* 301 S.C. at 200, 391 S.E.2d at 247 (citing *Hutto v. Ross,* 429 U.S. 28, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976)). A statement "induced by a promise of leniency is involuntary only if so connected with the inducement as to be a consequence of the promise." *Compton,* 366 S.C. at 680, 623 S.E.2d at 666; *see also State v. Saltz,* 346 S.C. 114, 136, 551 S.E.2d 240, 252 (2001); Rochester, 301 S.C. at 200, 391 S.E.2d at 247; *State v. Peake,* 291 S.C. 138, 139, 352 S.E.2d 487, 488 (1987).

In *Peake,* our state supreme court held a defendant's statements made to an investigating officer were induced by a

promise of leniency because the officer told the defendant the State would not seek the death penalty if he made a statement. 291 S.C. at 139, 352 S.E.2d at 488. However, in *Rochester*, the supreme court found a statement made by a polygraph examiner was not an inducement by the promise of leniency. The examiner's statement simply conveyed that it would be in the defendant's best interest to tell the truth. 301 S.C. at 201, 391 S.E.2d at 247. The *Rochester* court further noted, "[S]tanding alone, the polygraph examiner's comment did not constitute the kind of hope or reward or benefit condemned by this Court in *Peake*." *Id.*

In the case *sub* judice, Miller maintains his statements were not freely and voluntarily given because they were induced by a promise of an eight to twelve year sentence. However, Miller was not present to testify, and the only person who testified at the *Denno* hearing that the promise existed was Varner, Miller's attorney. Unlike the circumstances in *Peake*, in this instance three officers and Assistant Attorney General Evans denied any promise of leniency in exchange for Miller's statements. Although the officers and Evans told Miller it was in his best interest to cooperate, no one made any direct or implied promise of leniency. As a result, Miller's statements were made in the "hope" of leniency rather than as a consequence of a "promise."

In ruling on the admissibility of Miller's statements, the trial judge had the opportunity in the *Denno* hearing to listen to the testimony, assess the demeanor and credibility of all witnesses, and weigh the evidence accordingly. In determining Miller knowingly, intelligently, and voluntarily made the statements the trial judge ruled:

[T]he [c]ourt cannot conclude that the statements to Agents Bragg and Sonnefeld were not freely voluntarily given after Mr. Miller was afforded all of his rights, warning and safeguards pursuant to the case law in such cases made and provided, or that the handwritten statement was not freely and voluntarily given.

Furthermore, the court instructed the jury to carefully scrutinize all the surrounding circumstances about and concerning such statement or statements before you give any weight to any alleged statement of statements. You must

be satisfied beyond a reasonable doubt that the statement was made by the accused person uninfluenced by promise of reward, threats of injury or diminution of his rights.

The trial judge analyzed the voluntariness of Miller's statements in compliance with the due process requirements. Luculently, the admission of Miller's statements at trial was not an abuse of discretion.

## II. Enforceability of Plea Offer

Miller next contends the promise of an eight-to-twelve-year sentence should have been enforced. Specifically, Miller claims the State's oral promise of eight-to-twelve years was binding because he detrimentally relied on it by disclosing the information the State wanted. We disagree.

"[I]t is the prerogative of any person to waive his rights, confess, and plead guilty, under judicially defined safeguards, which are adequately enforced." *Reed v. Becka,* 333 S.C. 676, 685, 511 S.E.2d 396, 401 (Ct.App.1999); *see also State v. Armstrong,* 263 S.C. 594, 597, 211 S.E.2d 889, 890 (1975). However, a defendant has no constitutional right to plea bargain. *Reed,* 333 S.C. at 685, 511 S.E.2d at 401. Furthermore, the trial judge is not required to accept a plea. *Id.; see also Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (stating defendant has no absolute right to have a guilty plea accepted). However, once a defendant enters a guilty plea and the plea is accepted by the court, due process requires the plea bargain be honored. *Reed,* 333 S.C. at 686, 511 S.E.2d at 401.

While plea agreements are a matter of criminal jurisprudence, most courts have held they are subject to contract principles. *See, e.g., Reed v. Becka,* 333 S.C. 676, 686, 511 S.E.2d 396, 401 (Ct.App.1999); *United States v. Ringling,* 988 F.2d 504, 505 (4th Cir.1993); *United States v. Harvey,* 791 F.2d 294, 300 (4th Cir.1986) ("[I]n the process of determining whether disputed plea agreements have been formed or performed, courts have necessarily drawn on the most relevant body of developed rules and principles of private law, those pertaining to the formation and interpretation of commercial contracts."). Unless intended by both parties, terms or conditions should not be read into a plea agreement. *State v.*

*Compton,* 366 S.C. 671, 678, 623 S.E.2d 661, 665 (Ct.App.2005). Until performance occurs, parties are free to withdraw their offers. *Reed,* 333 S.C. at 687, 511 S.E.2d at 402.

A plea agreement is only an "offer" until the defendant enters a court-approved guilty plea. *Id.* at 688, 511 S.E.2d at 403. A defendant accepts the "offer" by pleading guilty. *Id.* Until formal acceptance has occurred, the plea is not binding on the defendant, the State, or the court. *Id.* This general rule is subject to a detrimental reliance exception. *Custodio v. State,* 373 S.C. 4, 11, 644 S.E.2d 36, 39 (2007); *Reed,* 333 S.C. at 688, 511 S.E.2d at 403. The fact that an agreement was oral does not prevent possible enforcement. *Id.* Absent a plea of guilt, a defendant may enforce an oral plea agreement upon a showing of detrimental reliance. *Id.* Even if the agreement has not been finalized by the court, a defendant's detrimental reliance on a promise in plea-bargaining may make a plea binding. *Id.* A defendant who provides beneficial information to law enforcement can be said to have relied to his detriment. *Id.*

State prosecutors are obligated to fulfill the promises they make to defendants when those promises serve as inducements to defendants to plead guilty. *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). South Carolina has recognized the principles set forth in *Santobello;* when an accused pleads guilty upon the promise of a prosecutor, the agreement must be fulfilled. *See Sprouse v. State,* 355 S.C. 335, 338, 585 S.E.2d 278, 280 (2003); *State v. Thrift,* 312 S.C. 282, 292, 440 S.E.2d 341, 347 (1994); *see also State v. Mathis,* 287 S.C. 589, 592, 340 S.E.2d 538, 540 (1986) ("The public interest of encouraging settlement of criminal cases without necessity of trial favors permitting an accused to plead guilty to the offense charged without prejudicing his position if it is later withdrawn.") (quoting *State v. Wright,* 103 Ariz. 52, 436 P.2d 601, 604–05 (1968)).

However, a defendant may not attempt to create a firm commitment out of plea negotiations. *State v. Whipple,* 324 S.C. 43, 49, 476 S.E.2d 683, 687 (1996). The State is not bound to accept a defendant's terms simply because a defendant reveals otherwise undiscoverable facts in the hope of securing a favorable plea agreement. *Id.; State v. Thompson,*

278 S.C. 1, 292 S.E.2d 581 (1982), *cert. denied,* 456 U.S. 938, 102 S.Ct. 1996, 72 L.Ed.2d 458 (1982) (holding solicitor's plea negotiations to consider life sentence did not prevent State from seeking death penalty) *overruled in part on other grounds by State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991).

In *Whipple,* the court concluded no plea agreement was reached when a solicitor told Whipple he would consider, not promise, a life sentence if substantial mitigating evidence was demonstrated. 324 S.C. at 48, 476 S.E.2d at 686. Contrastively, in *Custodio,* all of the evidence presented conclusively showed that an agreement between the defendant and solicitor existed. 373 S.C. at 10, 644 S.E.2d at 38. The court ruled Custodio fully cooperated by providing helpful information in reliance on the solicitor's assurances of a fifteen-year sentence cap and was therefore entitled to have the agreement enforced. *Id.* at 12, 644 S.E.2d at 39.

In the present case, the evidence indicates the communications between Evans and Varner about an eight-to-twelve-year sentence never reached the level of a promise or agreement. Evans testified the protocol in grand jury cases was to formally, in writing, extend a plea offer after the defendant was debriefed and the desired information obtained. In accordance with that practice, the only offer Evans ever made Miller was a written plea agreement for fifteen years.

Discussions between Evans and Varner about a range of potential sentences prior to Miller's debriefing were plea negotiations and cannot be construed as an "offer." Nothing in the testimony indicates Evans ever intended to agree to an eight-to-twelve-year plea. Miller was not present at trial and never expressed his understanding of the terms of the alleged "deal." Furthermore, Miller never accepted a plea offer by entering a guilty plea. Admittedly, Miller revealed information in the hope of securing a favorable plea. Nevertheless, without an affirmative promise or plea offer from the State of eight to twelve years, Miller's cooperation did not bind the State to accept his terms.

Accordingly, we find the trial judge did not err in declining to enforce the alleged eight-to-twelve-year agreement.

## *CONCLUSION*

We hold the trial court did not err in admitting Miller's oral and written statements at trial, because they were knowingly, intelligently, and voluntarily made. We rule the evidentiary record does **NOT** contain an enforceable plea agreement. The conviction and sentence of Miller are

**AFFIRMED.**

THOMAS, J. and CURETON, A.J., concur.