735 S.E.2d 541

The STATE, Appellant/Respondent,

v.

Kendra SAMUEL, Respondent/Appellant.

Appellate Case No. 2010–180226.

No. 5046.

Court of Appeals of South Carolina.

Heard Oct. 16, 2012.
Decided Nov. 14, 2012.
Rehearing Denied Dec. 18, 2012.

---

594

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General William M. Blitch, Jr., and Solicitor Daniel E. Johnson, all of Columbia, for the State.

Richard A. Harpootlian and Graham L. Newman, both of Richard A. Harpootlian, P.A., of Columbia, for Kendra Samuel.

LOCKEMY, J.

In this appeal, the State argues the trial court erred in suppressing one of Kendra Samuel's statements to law enforcement. The State claims the record contains no basis for the trial court's decision, and the trial court's failure to exercise any discretion constituted an abuse of discretion. Alternatively, the State claims the trial court erred in excluding the statement pursuant to a Rule 403, SCRE analysis. Samuel cross-appeals the trial court's denial of her motion to suppress her statements to law enforcement. She maintains the statements were taken in violation of her *Miranda*[1] rights because her pre-custodial *Miranda* warning and waiver was not effective after custody was established. We affirm in part, reverse in part, and remand.

**FACTS**

On July 31, 2008, Samuel babysat Jessica Davis's two-year-old son. Samuel took the child to the park and returned home around 7 p.m., at which time she placed the child in his crib.

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

When Davis checked on her son at some time after 11 p.m., she discovered he was not breathing and had passed away.

When Samuel and Davis gave their initial statements at the Columbia Police Department (CPD) on August 1, 2008, they were not considered suspects of a crime. After further investigation, Investigators Kevin Reese and A.L. Thomas requested additional statements from Samuel and Davis, and they voluntarily returned to the CPD on August 6, 2008.

Samuel was first interviewed by Investigator Joe Gray, who read Samuel her *Miranda* rights and had her sign an "Advice of Rights" form prior to conducting a polygraph examination. This occurred at approximately 10:30 a.m. Investigator Gray indicated Samuel was free to leave at any time before, during, or after his examination. Around 12:16 p.m., after conducting the polygraph examination, Investigator Gray informed Samuel the results showed deception in some of her answers. He then pulled his chair in front of Samuel, who was still seated and unrestrained in her chair, and continued to question her. These follow-up questions were not part of the polygraph examination, but were done as a result of the polygraph examination. She proceeded to give a statement of the events that transpired on July 31 (Statement 1), in which she discussed injuries occurring to the child, which was a change from the story she initially gave law enforcement. Investigator Gray subsequently notified Investigators Reese and Thomas that Samuel had provided an additional statement and concluded his interview with Samuel at about 1 p.m.

Investigator Thomas testified that because there were indications Samuel had changed her story, he and Agent Greg Shockley, who was with the South Carolina Law Enforcement Department's (SLED) Child Fatality Task Force, conducted an interview with Samuel in a different room from where her polygraph examination and first interview were administered. He testified Samuel was free to leave and not in custody, but he never explicitly told Samuel she was free to leave. He was also aware she had previously been advised of her *Miranda* rights. A portion of their interview with Samuel was recorded on a digital recorder (Statement 2). The digital recorder stopped recording due to memory shortage, so they continued memorializing her answers by having her write the remainder

of her statement. She also answered some questions in her written statement (Statement 3). The interview with Investigator Thomas and Agent Shockley was concluded around 2:30 p.m. Investigator Thomas's opinion was that Samuel was free to leave until approximately 5:40 p.m., when he contended she was taken into custody.

Investigators Thomas and Reese conferred with each other following the second interview, and after discussing the child autopsy results and information provided by Davis, they determined the evidence did not corroborate Samuel's story. They concluded it was necessary to ask Samuel some additional questions. Samuel was asked if she needed a break to use the restroom or get some water or food. Further, Investigator Reese asked Samuel if she had been advised of her rights and if she still wished to speak with them. She confirmed that she had been advised of her rights and indicated she was willing to continue talking. Samuel gave another taped statement (Statement 4), as well as handwritten answers to Investigator Reese's follow-up questions (Statement 5). In her final statements, Samuel admitted the child would not stop crying while in her care, so she picked him up and shook him until he stopped. After shaking him, the child was unresponsive. Instead of calling for help, Samuel left the house with the child and went to the park. She explained that her boyfriend picked them up from the park and brought them home. Davis was at the home when Samuel returned, but Samuel did not alert anyone to the child's condition and placed him in the crib. Investigator Reese testified Samuel had been free to leave and they could not have stopped her until her confession at some point between 3:58 p.m. and 5:17 p.m. This interview ended at 5:30 p.m.

On November 29, 2010, a pre-trial, *Jackson v. Denno*[2] hearing was held to determine whether Samuel's multiple statements to law enforcement were given knowingly and voluntarily. Samuel cited *State v. Bradshaw*, 193 W.Va. 519, 457 S.E.2d 456 (1995), to support her argument that because she was not re-advised of her *Miranda* rights after custody was established, any statements made during custodial interrogation were not voluntary or admissible in trial. Samuel

---

**2.** 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

conceded that staleness of her waiver was not an issue under these facts. The trial court held that by the preponderance of the evidence, Samuel was fully advised of her *Miranda* rights before any interrogation, and the constitutional safeguards were sufficiently met. Further, it found South Carolina case law supported the position that statements given after a polygraph examination are voluntary and admissible under certain circumstances, and in the present situation, the police were not "excessive or overbearing." After determining that all of Samuel's statements were given knowingly and voluntarily, the trial court held they were admissible into evidence.

Following the trial court's *Denno* ruling, the State assured the trial court Investigator Gray would not reference the polygraph in any manner, and he would only testify about advising Samuel of her rights and her post-*Miranda* statements to him. At that point, Samuel interjected and stated she wanted to bring in the polygraph, but maintained she was not allowed to do so under case law. Specifically, defense counsel said, "We want to bring in the polygraph.... We want the polygraph. We want to show that he says to her, 'You lie'. Now how can we do that when the Supreme Court has prohibited the mention of the polygraph?" She then argued a Rule 403 analysis dictated Statement 1 should be excluded. She contended that "[Investigator Gray] can testify that he Mirandized her, but anything that comes after—he says, 'I gave you a polygraph exam and you lie,'" at which time the trial court interrupted Samuel and agreed with her. It ruled that Investigator Gray would only be allowed to testify that he advised Samuel of her *Miranda* rights at 10:30 a.m. and then "turned her over to the other officers at 1:30." The State immediately stopped the hearing and requested the opportunity to file an appeal because Investigator Gray's testimony was "crucial" in explaining the three-hour time period in which he interviewed Samuel.

On December 1, 2010, the State served a notice of appeal from the trial court's oral order,[3] and Samuel served a cross-appeal on December 8, 2010.

---

**3.** *See State v. McKnight,* 287 S.C. 167, 168, 337 S.E.2d 208, 209 (1985) ("A pre-trial order granting the suppression of evidence which signifi-

## THE STATE'S APPEAL

Did the trial court err in finding a knowing and voluntary confession must be excluded based on a Rule 403, SCRE analysis?

## STANDARD OF REVIEW

 "The admission of evidence is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." *State v. Wills,* 390 S.C. 139, 142, 700 S.E.2d 266, 267 (Ct.App.2010) (citing *State v. Pagan,* 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006)). "An abuse of discretion occurs when the trial court's conclusions either lack evidentiary support or are controlled by an error of law." *Id.* (citing *Pagan,* 369 S.C. at 208, 631 S.E.2d at 265).

## LAW/ANALYSIS

 The State asserts the trial court correctly found Statement 1 was given knowingly and voluntarily but abused its discretion in subsequently suppressing it and only allowing Investigator Gray to testify he read Samuel her *Miranda* rights. Specifically, the State maintains the trial court did not provide a legal or factual basis for the statement's suppression, or alternatively, the trial court erred in excluding the statement under Rule 403, SCRE. We agree the trial court erred in finding Statement 1 should be suppressed based on the improper belief that polygraph evidence is *per se* inadmissible.

 As a threshold matter, Samuel contends the State did not preserve its argument regarding the lack of a legal or factual basis for suppression of Statement 1. *See State v. Porter,* 389 S.C. 27, 37, 698 S.E.2d 237, 242 (Ct.App.2010) ("The general rule of issue preservation is if an issue was not raised to and ruled upon by the trial court, it will not be considered for the first time on appeal."); *Queen's Grant II Horizontal Prop. Regime v. Greenwood Dev. Corp.,* 368 S.C. 342, 372, 628 S.E.2d 902, 919 (Ct.App.2006) ("Error preservation principles are intended to enable the trial court to rule after it has considered all relevant facts, law and arguments."

cantly impairs the prosecution of a criminal case is directly appealable under S.C.Code Ann. § 14–3–330(2)(a) (1976).").

(citing *Ellie, Inc. v. Miccichi,* 358 S.C. 78, 103, 594 S.E.2d 485, 498 (Ct.App.2004))). The record establishes the State's only argument was that the statements made to Investigator Gray were "crucial" to the State's case, and thus, it wanted to appeal the decision immediately. This statement did not preserve the State's appellate argument regarding the trial court's lack of a legal or factual basis for suppression. The State had the opportunity to request a more specific basis for the trial court's ruling, thereby preserving the argument, but the State only said, "based on your ruling, as I understand it that Investigator Gray would only be allowed to testify to the *Miranda* rights and none of the statement she made to him would be admissible, we would respectfully choose to appeal that at this time." Accordingly, we find the State did not preserve this particular argument.

We now analyze whether the trial court erred in suppressing the statement pursuant to Rule 403, SCRE. Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The record does not contain a significant Rule 403 analysis. It consisted of the trial court agreeing with Samuel that Statement 1 is prejudicial because Samuel could not present the polygraph to the jury, improperly preventing her from showing the full circumstances surrounding the voluntariness of Statement 1. *See State v. Miller,* 375 S.C. 370, 379, 383, 652 S.E.2d 444, 451 (Ct.App.2007) ("Once the trial judge determines [by the preponderance of the evidence] that the statement [was given voluntarily and] is admissible, it is up to the jury to ultimately determine, beyond a reasonable doubt, whether the statement was voluntarily made."); *see also State v. Pressley,* 290 S.C. 251, 252, 349 S.E.2d 403, 404 (1986) ("Evidence regarding the results of a polygraph test or the defendant's willingness or refusal to submit to one is inadmissible.").

We find error in the trial court's reliance upon Samuel's assertion that polygraph evidence is *per se* inadmissible. Samuel cites *Pressley* on appeal in support of her argument that polygraph results are not admissible in trial, but we

disagree with her reliance on that case. 290 S.C. at 252, 349 S.E.2d at 404.

Following its decision in *Pressley,* our supreme court found in *State v. Wright,* 322 S.C. 253, 256, 471 S.E.2d 700, 702 (1996),[4] that a trial court did not abuse its discretion in admitting the post-polygraph confession into evidence while prohibiting the appellant from mentioning the polygraph. Although the appellant's polygraph results showed deception, he wanted to admit it to show the jury his post-polygraph confession was not voluntary beyond a reasonable doubt. *Id.* at 254–55, 471 S.E.2d at 701. While recognizing "the authority against admitting evidence of polygraph examinations and the potential prejudice to appellant," the court indicated some flexibility to the general rule and stated the "appellant did not suggest at trial nor on appeal what limitation could have been placed on the disclosure to limit prejudice to appellant." *Id.* at 256, 471 S.E.2d at 702. "Without some limitation, the only inference the jury could reasonably have drawn from learning appellant's confession followed closely after a deceptive polygraph was that the confession was truthful and the answers given to the polygraph exam were untruthful." *Id.* That would have served "to bolster [the appellant's] confession rather than persuade the jury to believe the alleged coercion." *Id.*

After suggesting in *Wright* that polygraph evidence could potentially be admissible in trial, if sufficient safeguards were in place to limit the possible prejudice to the defendant, our supreme court further explained in *Council,* 335 S.C. at 23–24, 515 S.E.2d at 519–20, that "the results of polygraph examinations are *generally* not admissible because the reliability of the tests is questionable," but that "in light of the adoption of the SCRE, admissibility of [polygraph evidence] should be analyzed under Rules 702 and 403, SCRE and the *Jones* factors." Upon review of these cases, we find Samuel's statement that polygraph evidence is *per se* inadmissible is incorrect. The trial court could have conducted an analysis pursu-

---

4. This case was decided before our supreme court's decision in *State v. Council,* 335 S.C. 1, 23–24, 515 S.E.2d 508, 519–20 (1999), which clarified further that polygraph evidence was not *per se* inadmissible, and outlined the analysis required when determining whether polygraph evidence can be admitted into trial.

ant to *Council* to determine what evidence, if any, regarding the polygraph examination was admissible in the present case.

Because the trial court based its decision to suppress Statement 1 on the erroneous belief that polygraph evidence was *per se* inadmissible, we reverse and remand this issue to the trial court in accordance with this decision.

## SAMUEL'S CROSS–APPEAL

Did the trial court err in determining Samuel's statements were voluntarily given when a law enforcement officer administered pre-custodial *Miranda* rights but failed to re-advise Samuel of her *Miranda* rights after being taken into custody?

## STANDARD OF REVIEW

▇▇▇▇ "The trial judge determines the admissibility of a statement upon proof of its voluntariness by a preponderance of the evidence." *State v. Miller*, 375 S.C. 370, 378, 652 S.E.2d 444, 448 (Ct.App.2007) (citing *State v. Washington*, 296 S.C. 54, 55, 370 S.E.2d 611, 612 (1988); *State v. Smith*, 268 S.C. 349, 353–54, 234 S.E.2d 19, 21 (1977)). "The jury must determine whether the statement was freely and voluntarily given beyond a reasonable doubt." *Id.* (citing *Washington*, 296 S.C. at 55–56, 370 S.E.2d at 612). "On appeal, the conclusion of the trial judge as to the voluntariness of a statement will not be reversed unless so erroneous as to show an abuse of discretion." *Id.* (citing *State v. Von Dohlen*, 322 S.C. 234, 243, 471 S.E.2d 689, 695 (1996)). "When reviewing a trial judge's ruling concerning voluntariness, the appellate court does not re-evaluate the facts based on its own view of the preponderance of the evidence, but simply determines whether the trial judge's ruling is supported by any evidence." *Id.* at 378–79, 652 S.E.2d at 448 (citing *State v. Saltz*, 346 S.C. 114, 136, 551 S.E.2d 240, 252 (2001)).

## LAW/ANALYSIS

▇▇▇ Samuel argues that a law enforcement officer's pre-custodial advisement of her *Miranda* rights was not sufficient for the subsequent custodial interrogation, and law enforcement should have re-advised her of them when she was taken into custody. She maintains that because *Miranda* rights are only applicable during custodial interrogation, the failure to

administer them again once she was in custody renders her statements inadmissible. We disagree.

South Carolina has not directly addressed the issue of whether a pre-custodial *Miranda* waiver is *per se* ineffective when applied to confessions made after custody was established. However, several other states have addressed this issue, and all but one determined that instead of a bright-line approach to the issue, it is more appropriate to apply a totality-of-the-circumstances assessment. *See Upton v. State,* 343 Ark. 543, 36 S.W.3d 740, 743 (2001) (" 'When the police are conducting a good faith [pre-custodial] investigation at police headquarters, they may have difficulty in determining the precise moment when questioning turns into custodial interrogation and Miranda warnings are required. Although the uncertain line between questioning and custodial interrogation does not excuse late warnings, it does provide a justification for the validity of good faith early warnings[,] which are sufficiently proximate to formal custody to alert the person being questioned to the importance of these constitutional rights.' " (quoting *State v. Burge,* 195 Conn. 232, 487 A.2d 532, 543 (1985))); *State v. Dispoto,* 189 N.J. 108, 913 A.2d 791, 800–01 (2007) (stating that instead of finding that pre-custodial *Miranda* waivers are *per se* ineffective, a totality-of-the-circumstances approach "is preferable in that it encourages warnings when police question a suspect and allows law enforcement officials to pursue their investigations, subject to later review by a neutral court"); *State v. Grady,* 317 Wis.2d 344, 766 N.W.2d 729, 734–36 (2009) (finding that "a sound interpretation of *Miranda* and sound public policy require the application of the [totality-of-the-circumstances] test rather than a bright-line rule"); *but see State v. Bradshaw,* 193 W.Va. 519, 457 S.E.2d 456, 466–67 (1995) (finding a defendant cannot anticipatorily invoke his Miranda rights, because the "window of opportunity" for the assertion of *Miranda* rights comes into existence only when that right is available during a custodial interrogation; however, to avoid a significant burden on the defendant, when police have given *Miranda* rights outside the context of custodial interrogation, those warnings must be repeated once custodial interrogation begins).

The majority view is convincing, and we find pre-custodial *Miranda* warnings and waivers may be sufficiently effective

during a subsequent custodial interrogation without the need for re-advisement, but a totality-of-the-circumstances assessment should be applied to each case. In the present case, evidence in the record supports the trial court's finding that Samuel's statements were voluntary and admissible at trial.[5] For the forgoing reasons, we affirm the trial court.

## CONCLUSION

In conclusion, we reverse the trial court's exclusion of Statement 1 based upon its inaccurate assessment that polygraph evidence is *per se* inadmissible. Additionally, we affirm the trial court's ruling that Samuel's statements to law enforcement were voluntary and admissible pursuant to *Jackson v. Denno.* Finally, we remand this case in accordance with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

SHORT and KONDUROS, JJ., concur.

---

5. Samuel conceded to the trial court that staleness was not an issue under these facts, and the sole argument on appeal is that pre-custodial *Miranda* rights and waivers are not effective once custody is subsequently established. We also note Samuel was asked whether she had been given her rights, to which she responded affirmatively and indicated she was willing to continue with the interview.